2014-1488

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

TARGET TRAINING INTERNATIONAL, LTD.

Plaintiff-Appellant,

v.

MICHELLE K. LEE, Deputy Director, U.S. Patent and Trademark Office, Deputy Under Secretary for Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA in Case No. 13-3057, Judge Mark W. Bennett

_____

CORRECTED OPENING BRIEF OF APPELLANT TARGET TRAINING INTERNATIONAL, LTD.

Edmund J. Sease
Cory A. McAnelly
McKEE, VOORHEES & SEASE, P.L.C.
801 Grand Avenue, Suite 3200
Des Moines, IA  50309-2721
Telephone: (515) 288-3667
Facsimile: (515) 288-1338
Attorneys for Appellant

August 26, 2014

## CERTIFICATE OF INTEREST

Counsel for the Appellant, Target Training International, Ltd., certifies the following:

1.      The full name of every party or amicus represented by me is:

Target Training International, Ltd.

2.      The name of the real party in interest represented by me is:

Target Training International, Ltd.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:  TTI Success Insights North America, Inc., and TTI Success Insights International, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: Edmund J. Sease, a Member of the firm McKee, Voorhees & Sease, P.L.C., 801 Grand Avenue, Suite 3200, Des Moines, Iowa 50309-2721, and Cory A. McAnelly, an Associate of the firm McKee, Voorhees & Sease, P.L.C., 801 Grand Avenue, Suite 3200, Des Moines, Iowa 50309-2721.

Date:     August 18, 2014                              /s/ Edmund J. Sease

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ................................................................1

JURISDICTIONAL STATEMENT ...............................................................2

I.    STATEMENT OF THE ISSUES ................................................3

II.   STATEMENT OF THE CASE ..................................................3

    A.    Preliminary Statement ............................................................3

    B.    Procedural History...................................................................6

        1.    The '372 Patent Litigation...............................................6

        2.    USPTO Proceedings .........................................................7

        3.    District Court and Appellate Proceedings ...........................9

III.  STATEMENT OF THE FACTS ................................................9

IV.   SUMMARY OF THE ARGUMENT ......................................14

    A.    The District Court Improperly Applied Eighth Circuit Law, As
          Opposed to Properly Applying Federal Circuit Law, in
          Determining that 5 U.S.C. § 701(a)(2) Applied to Appellant's
          Claims.........................................................................................15

    B.    Regardless of the Applicable Law, the District Court Incorrectly
          Applied 5 U.S.C. § 701(a)(2) to Appellant's Claims ...................17

V.    ARGUMENT....................................................................................18

    A.    Standard of Review ...................................................................18

    B.    Federal Circuit Law Applies to Appellant's Claims under the
          Administrative Procedure Act....................................................19

        1.    *Federal Circuit Law is Applicable to the Claims as They
            Implicate the Patent Laws of the United States*............................20

        2.    *Federal Circuit Law Differs From Eighth Circuit Law in its
            Application of the Exception to the APA under § 701(a)(2)* ........22

        3.    *This Court Should Remand for Review of the APA Claims
            Under Federal Circuit Law* ...........................................................25

    C.    Under Both Eighth Circuit and Federal Circuit Law, the Exception
          under 5 U.S.C. § 701(a)(2) Does Not Apply to Appellant's
          Administrative Procedure Act Claims .........................................26

1.  *The District Court's Decision Should be Reversed as There is a Standard by Which Rule 183 Decisions Can Be Reviewed* ......................................................................28

2.  *The District Court's Decision Should be Reversed as the Rule 183 Decision to Waive Notice Requirements is Not a Decision "Within Agency Expertise"* ...........................................29

VI.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT.....................32

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Almond Bros. Lumber Co. v. United States*, 721 F.3d 1320
(Fed. Cir. 2013) .......................................................... 16, 22, 24, 26, 30

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235,
163 L.Ed.2d 1097 (2006) ......................................................................2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................29

*Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 223 U.S.P.Q. 1074
(Fed. Cir. 1984) (en banc) ...................................................................20

*Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237 (Fed. Cir. 1993) ....................32

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................29

*Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850,
20 U.S.P.Q.2d 1252 (Fed. Cir.1991).....................................................20

*Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 106 S. Ct. 2133,
90 L. Ed. 2d 623 (1986) .......................................................................22

*Dodco, Inc. v. American Bonding Co.*, 7 F.3d 1387 (8th Cir. 1993)......................30

*Doe v. United States*, 372 F.3d 1308 (Fed. Cir. 2004) ...........................................15

*Dunlop v. Bachowski*, 421 U.S. 560, 95 S. Ct. 1851, 44 L. Ed. 2d 377 (1975) ......22

*Fanning, Phillips & Molnar v. West*, 160 F.3d 717 (Fed. Cir. 1998).......................2

*Folden v. United States*, 379 F.3d 1344 (Fed. Cir. 2004)........................................2

*Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209,
2 U.S.P.Q.2d 2015 (Fed. Cir.1987)......................................................20

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ...................................................................30

*Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158,
225 USPQ 34 (Fed. Cir. 1985).............................................................32

*Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997) ........................32

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356
  (Fed. Cir. 1999) ....................................................................20

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652,
  94 L. Ed. 865 (1950) ...............................................................3

*Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564,
  223 U.S.P.Q. 465 (Fed. Cir. 1984)............................................20

*Pregis Corp. v. Kappos*, 700 F.3d 1348 (Fed. Cir. 2012)................................ 20, 22

*Printed Media Servs. v. Solna Web, Inc.*, 11 F.3d 838 (8th Cir. 1993) ...................30

*Pullman–Standard v. Swint*, 456 U.S. 273, 102 S. Ct. 1781,
  72 L. Ed. 2d 66 (1982) ...........................................................32

*Rack Room Shoes v. United States*, 718 F.3d 1370 (Fed. Cir. 2013)
  cert. denied, 134 S. Ct. 2287, 189 L. Ed. 2d 172 (2014) ......................................25

*Regents Of Univ. Of New Mexico v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003) ........16

*Semler v. Klang*, 603 F. Supp. 2d 1211 (D. Minn. 2009).........................................30

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041 (Fed. Cir. 2012)
  cert. denied, 133 S. Ct. 126, 184 L. Ed. 2d 28 (2012) .........................................19

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005) ......................16

*State of N.D. ex rel. Bd. of Univ. & Sch. Lands v. Yeutter*, 914 F.2d 1031
  (8th Cir. 1990)................................................................. 17, 18, 24, 30

*Tamenut v. Mukasey*, 521 F.3d 1000 (8th Cir. 2008) ....................................... 26, 27

*Tuepker v. Farmers Home Admin.*, 708 F.2d 1329 (8th Cir. 1983) ................. 23, 24

**Statutes**

28 U.S.C. § 1295 .......................................................................................2

28 U.S.C. § 2107 .......................................................................................2

35 U.S.C. § 311 .....................................................................................7, 10

35 U.S.C. § 312 .....................................................................................7, 10

5 U.S.C. § 701 ............................................................................ ii, 2, 6, 18, 23, 26, 28

5 U.S.C. § 702 ............................................................................ 2, 3, 4, 9, 14, 17

5 U.S.C. § 704 ............................................................................................ 2, 14

5 U.S.C. § 706 .................................................................................... 2, 14, 22

**Rules**

37 C.F.R. § 1.181 ................................................................................... 8, 12

37 C.F.R. § 1.182 .......................................................................................... 8

37 C.F.R. § 1.183 ............................................... 5, 8, 13, 18, 19, 21, 25, 27, 29, 31

37 C.F.R. § 1.248 ....................................................................................... 10

37 C.F.R. § 1.8 ........................................................................................... 10

37 C.F.R. § 1.915 ................................................................................... 11, 13

37 C.F.R. § 1.919 ....................................................................................... 11

Fed. R. App. P. 4 ......................................................................................... 2

Fed. R. Civ. P. 4 ......................................................................................... 30

## **STATEMENT OF RELATED CASES**

No other appeal in or from the same proceeding was previously before this or any other appellate court.   There are two other cases known to counsel that will be directly affected by this Court's decision in this appeal:     *Target Training International, Ltd. v. Extended Disc North America, Inc*., pending in the Southern District of Texas, Civil Action No. 4:10-cv-03350 (D.C. SD Tex.) and *Target Training International, Ltd. v. Extended Disc International, Ltd..*, pending in the Southern District of Texas, Civil Action No. 4:11-cv-02531 (D.C. SD Tex.).

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 701 – 06. This appeal, noticed on March 26, 2014, is timely. 28 U.S.C. § 2107(b); Fed. R. App. P. 4. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).[1]

---

[1] Appellant does not concede that subject matter jurisdiction exists in this Court pursuant to 28 U.S.C. § 1295(a)(1). This case was originally appealed to the United States Court of Appeals for the Eighth Circuit and was subsequently transferred to this Court on Motion of the Appellee, without opinion. The Appellant strongly resisted this transfer as this action does not "arise under" or "raise a substantial question of patent law," but raises issues of substantive and procedural due process. Upon transfer to this Court, Appellant again raised the jurisdictional issue through a Motion to Transfer back to the Eighth Circuit Court of Appeals. On June 30 2014, this Court denied the Motion and held that "the Eighth Circuit concluded that this case raised such a question, and Target has not in the papers submitted shown that this conclusion should be disturbed." [Dkt. No. 17 at 2.] Appellant maintains its position that this case belongs with the Eighth Circuit Court of Appeals. Though the Appellant submits this brief in support of its appeal, "any party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998).

## I.    STATEMENT OF THE ISSUES

***Incorrect Law***:  Whether the District Court erred in applying Eighth Circuit law in determining whether 5 U.S.C. § 702(a)(2) applies to the decision of the Director, while a proper application of Federal Circuit law interpreting the Administrative Procedure Act would have resulted in review of the Director's arbitrary and capricious decision.

***APA Exception Does Not Apply***:  Whether the District Court erred in deciding that 5 U.S.C. § 702(a)(2) applied to the decision of the Director to unilaterally, without notice, and without explanation change the filing date of the *Inter Partes* Reexamination properly and completely filed by EDNA only on September 16, 2012, after the statute expired.

## II.    STATEMENT OF THE CASE

### A.    Preliminary Statement

"But when notice is a person's due, process which is a mere gesture is not due process." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950).

This case is about unchecked authority to circumvent notice requirements, service requirements, and procedural due process.  The United States Patent Office, its Directors, and its employees should not be permitted to maintain the authority to ignore their own well established requirements of notice and service

when such decisions are without reason or explanation or—in the event an explanation is provided—when the decision is arbitrary and capricious.

This understanding is fundamental and is embodied in both the Constitution of the United States and nearly every decision-making process of the United States government and its agencies. In some cases, however, the mechanisms for adequate due process are not afforded and, in rare circumstances, the mechanisms for adequate due process are simply ignored. That said, an aggrieved party is not without recourse as the Administrative Procedure Act ("APA") gives the District Courts of the United States the power to review such agency actions when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "contrary to the constitutional right, power, privilege, or immunity." 5 U.S.C. § 702(2)(A), (B).

In this case, the Appellant has been deprived of exactly that which due process and the APA are intended to protect! EDNA, the requestor, chose to wait until the sunset day of the *Inter Partes* Reexamination statute to file their challenge to U.S. Patent No. 7,249,372 ("the '372 patent"). In doing so, EDNA chose to run the risk of failing to satisfy the requirements set forth for a proper and complete filing before the expiration of the statute allowing for such reexamination. Unfortunately for EDNA, a failure to properly effectuate service in accordance

4

with the regulations set forth by the USPTO resulted in a filing date of September 16, 2012, one day after the expiration of that statute.

Without request by either party and, more importantly, without explanation, the USPTO unilaterally changed the filing date of the *Inter Partes* Reexamination request from September 16, 2012 to September 14, 2012.  While this decision to change a filing date by two days seems insignificant, in this case the reality is quite the opposite.  A proper filing date of September 16, as originally recognized by the USPTO, ends the review of the '372 patent and precludes EDNA from such a challenge.

Upon petition by the Appellant to change the date back to its original and proper filing date of September 16, 2012, the Director specifically recognized that all parts of the Request must be received by the USPTO in order to afford a filing date.  [JA135.]  However, the Director then pointed to the extraordinary powers afforded by 37 C.F.R. § 1.183 ("Rule 183") in order to justify the decision to change the filing date to September 14, 2012.  The Director justified this hindsight application of Rule 183 by noting that, despite the fact that the regulations had been violated, "justice required" that the proceeding be afforded a filing date of September 14.

The original decision to change the date without explanation and the Director's hindsight justifications for affording a filing date inconsistent with the

regulations is the exact injustice that the APA was designed to correct. However, as opposed to allowing the Appellant a chance to proceed pursuant to the APA, the District Court turned to a narrow exception to the APA which precludes review of decisions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In doing so, the District Court improperly shielded the arbitrary and capricious decision of the Director from judicial review and applied the incorrect law of the Eighth Circuit in determining whether the exception applied. As such, Appellant seeks this Court's review of the District Court's decision.

## B.    Procedural History

### 1.    *The '372 Patent Litigation*

The '372 patent is the subject of two related and parallel disputes in the United States District Court for the Southern District of Texas. On September 17, 2010, the Appellant filed a complaint against Extended Disc North America, Inc. ("EDNA") for direct and contributory infringement of the '372 patent ("*TTI (I)*"). On April 4, 2011, Extended DISC International, Inc., a Finnish Corporation, ("EDI") filed a first *Ex Parte* Request for Reexamination and, on May 4, 2011, EDNA, the U.S. franchisee of EDI and defendant in *TTI (I)*, filed the first Motion to Stay Litigation Pending Reexamination.

On May 19, 2011, the Court denied EDNA's Motion to Stay Pending Reexamination in *TTI (I)*. On June 7 2011, and in response to defenses asserted by

EDNA, TTI filed a sealed Motion for Leave to Amend the Complaint in *TTI (I)* to add as a defendant, Extended DISC International, Inc. ("EDI") – the Finland based company.    On June 21, 2011, the Court denied the Motion to Amend the Complaint to add EDI of Finland as a defendant in *TTI (I)*.

On July 7, 2011, TTI filed a separate and second complaint against EDI of Finland for direct and contributory infringement of the '372 patent ("*TTI (II)*") and, on January 24, 2012, EDI of Finland filed a Motion to Stay the second Litigation Pending Reexamination of the '372 patent in *TTI (II)*. On March 26, 2012, the Court granted the Motion to Stay the second Litigation Pending Reexamination in *TTI (II)*, and the case was stayed pending reexamination.  On July 23, 2012, about one week before trial was scheduled to begin in *TTI (I)*, the case against the U.S. franchisee, TTI filed a Motion for Continuance of Trial Date Due to Serious Illness of Lead Counsel.  On July 25, 2012, the Court denied the Motion for Continuance of the first case and, instead, entered an Order Staying this Litigation Pending Reexamination of the '372 patent in *TTI (I)*.

2.    *USPTO Proceedings*

The '372 patent issued to Plaintiff TTI, as assignee of Bonnstetter et al. on July 24, 2007.  [JA069.]   Allegedly, on September 14, 2012, EDNA filed a Request for *Inter Partes* Reexamination of the '372 patent pursuant to 35 U.S.C. §§ 311, 312 – Reexamination Control No. 95/002,307.  Consistent with regulations,

the USPTO assigned the Inter Partes Request a filing date of September 16, 2012, one day after the statute authorizing *Inter Partes* Reexamination expired. For reasons unknown to the Appellant, the USPTO unilaterally, and without notice, changed the filing date to September 14, 2012, before the statute expired.

On November 14, 2012, counsel for TTI filed an Opposition to the change of reexamination filing date and included a petition to reinstate the originally assigned September 16, 2012 filing date pursuant to the Director's powers under 37 C.F.R. §§ 1.181, 1.182, or 1.183. On November 28, 2012, EDNA filed a Response to TTI's Opposition. On December 7, 2012, an Order was entered by the USPTO granting EDNA's request for Inter Partes Reexamination while the Opposition to the change of filing date remained pending.

On June 5, 2013, the Director of the Central Examination Unit issued a non-final Decision on the Petitions under 37 C.F.R. § 1.181, denying and dismissing both the original Opposition/Petition and the Reply/Petition as related to the filing date. [JA107–JA115.] On June 25, 2013, TTI filed a Request for Reconsideration of the Director's denial and decision dated June 5, 2013. [JA116 – JA121.] On September 6, 2013, the Director of the Central Examination Unit dismissed the Request for Reconsideration, and maintained the reassigned filing date of September 14, 2013. [JA129 – JA136.]

8

3.    *District Court and Appellate Proceedings*

On October 21, 2013, Appellant filed the instant case in the United States District Court for the Northern District of Iowa alleging violations of the Administrative Procedure Act under 5 U.S.C. § 702 and the Due Process Clause of the Fifth Amendment to the Constitution of the United States of America. [JA048, JA052 – JA068.]  On December 23, 2013, the Appellee filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). [JA049, JA137–JA148.]  On January 9, 2014, the Appellant filed an Amended Complaint and a brief in Opposition to the Motion to Dismiss. [JA049, JA180 – JA211.] The Appellee filed a Reply in Support of the Motion to Dismiss on January 16, 2014. [JA049, JA212 – JA218.]  Both parties filed papers on a Second Motion to Dismiss as related to the Amended Complaint, however both parties admitted that the Amended Complaint did not change the arguments in the original Motion to Dismiss. [JA220–JA229.]

On March 5, 2014, the District Court entered an Order granting the Appellee's Motion to Dismiss for lack of subject matter jurisdiction and entered Judgment dismissing the case on the same day. [JA001–JA045.]

## III.    STATEMENT OF THE FACTS

The procedural history of this case provides the framework for the factual analysis necessary to review this case.  Though the procedural posture of this case

has become quite convoluted, the disagreement in this case can be simply stated; EDNA alleges that it properly filed a request for *Inter Partes* Reexamination of the '372 patent pursuant to 35 U.S.C. §§ 311, 312 on September 14, 2012, while the regulations, the original decision of the USPTO, and the Appellant argue that the proper filing date is September 16, 2012—one day late for initiating a review. [JA131.]

The USPTO regulations are crucial in this case as they provide the requirements for receiving a filing date for an application on an *Inter Partes* Reexamination. 37 C.F.R. § 1.8 provides:

> (a) . . .
>> (1) Correspondence will be considered as being timely filed if: . . .
>>> (i) . . .
> (A) Addressed as set out in § 1.1(a) and deposited with the U.S. Postal Service with sufficient postage as first class mail; . . .
> (ii) The correspondence includes a certificate for each piece of correspondence stating the date of deposit or transmission. The person signing the certificate should have reasonable basis to expect that the correspondence would be mailed or transmitted on or before the date indicated."

Further, 37 C.F.R. § 1.248 requires that,

> (a) Service of papers must be on the attorney or agent of the party if there be such or on the party if there is no attorney or agent, and may be made in any of the following ways: . . .
> (4) Transmission by first class mail. When service is by mail the date of mailing will be regarded as the date of service . . .

These requirements must be satisfied in order to receive a filing date with the USPTO for *Inter Partes* Reexamination as "[t]he filing date of a request for inter partes reexamination is the date on which the request satisfies all the requirements for the request set forth in § 1.915."[2]  37 C.F.R. § 1.919.

EDNA alleges that the document it filed on September 14, 2012 included a separate paper entitled "Certificate of Service" stating service of the Request by first class mail on September 14, 2012.  However, on September 15, 2012, the PTO Electronic Filing System acknowledged the electronic filing of a paper entitled "Second Certificate of Service" stating service of "a second copy of the Request . . ." by "United States Postal Service, Tracking Number 9434610200992489031677, Shipment ID MMNH7MU1FGDGN" and referencing the documents sent on September 14, 2012. [JA184.]  It was not until September 16, 2012 that the USPTO Electronic Filing System acknowledged the electronic filing of a paper entitled "Corrected Certificate of Service" stating service of "copies of the Request . . ." were by first class mail on September 14, 2012 "in six packages, each package identified as 1 of 6, 2 of 6, 3 of 6, 4 of 6, 5 of 6, and 6 of 6."  [JA154–JA155.]  Though multiple papers were filed with the USPTO, the first paper that complied with the regulations was not filed with the USPTO until

---

[2] 37 C.F.R. § 1.915(b)(6) provides that "[a] request for *inter partes* reexamination must include . . . [a] certification by the third party requester that a copy of the request has been served in its entirety on the patent owner."

September 16, 2012. The filing date is not when you start filing papers, it is when you have actually filed all that the law requires.

In applying these regulations, the USPTO originally and correctly issued a filing date of September 16, 2012. However, for reasons unknown to the Appellant, and despite the fact that the September 16 filing date afforded by the USPTO was the only date on which EDNA complied with the regulations, the USPTO unilaterally decided to change the filing date to September 14, 2012. It would seem that simply bringing this error to the attention of the USPTO would evoke immediate, corrective action. Yet, this was not the case.

On September 14, 2012, the Appellant filed an Opposition pursuant to 37 C.F.R. § 1.181 to the unilateral change in the effective filing date from September 16 to September 14. The Appellant clearly set forth these facts with the understanding that the regulations are clear, and that any departure must have been in error. [JA156–JA164.] However, on June 5 2013, in the USPTO's initial Decision on the 1.181 Petition, the Director recited the relevant statutes yet determined that the proper filing date, despite not having received all parts until September 16, 2012, was September 14, 2012. [JA171.] As such, the Director denied the Petition and reinstated the September 14 filing date. [JA172.]

On June 25, 2013 the Appellant requested reconsideration of the USPTO's June 5 decision. On September 16, 2013, the USPTO issued a decision on the

request for reconsideration and, this time, the Director agreed with the Appellant. [JA173–JA179.]  The Director noted in the Decision, "[i]t is agreed that Rule 915 requires third party requestor to include a certificate of service in the Request and that Rule 919 requires that all parts of the Request must be received by the Office to afford a filing date."  [JA178.]  To the Appellant, this statement made the outcome of the Request for Reconsideration clear: the Director would reinstate the September 16, 2012 filing date. Unfortunately for the Appellant, the Director decided to invoke Rule 1.183 which allows the Director to,

> In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, sua sponte, or on petition of the interested party, subject to such other requirements as may be imposed.

The Director then set forth that, despite the clear failure to comply with the regulations, "justice required" that the proceeding be afforded a filing date of September 14, 2014 because Appellant was initially, though ineffectively, serviced on that date.  [JA178–JA179.]

Unfortunately for the Appellant and the true interests of justice, this is the end of the factual basis for this Appeal.  The Appellant was not afforded the right or the ability to engage in discovery with either EDNA or the USPTO during the administrative or judicial portions of this proceeding.  As such—and as will be

discussed herein—the Appellant has not had the ability to discover evidence that is paramount to a determination under both the APA and the Due Process Clause.

## IV.    SUMMARY OF THE ARGUMENT

Appellant brought this case in the District Court for the Northern District of Iowa pursuant to the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment.   [JA180–JA196.]   In bringing these claims, Appellant argued,

> Under the Administrative Procedure Act, this Court may review an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ."  5 U.S.C. § 704.  Further, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

[JA190.]  Further, 5 U.S.C. § 706(2)(A)  and (B) provide that a district court may "hold unlawful and set aside" any agency action that is either "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, power, privilege, or immunity . . ."  Appellant challenged the decision of the Director "to suspend the rules under Section 183 and deny the Section 181 petition" as it "was arbitrary and capricious [and] it failed to address the paramount importance of notice and the Director's decision admits that the service was improper yet makes a decision that is directly contrary to such evidence."  [JA192.]   Appellant further challenged the decision to unilaterally

14

change the filing date and then uphold this change while admitting its failure to comply with the relevant statutes as violating the Due Process clause of the Fifth Amendment.  [JA191.]

## A.    The District Court Improperly Applied Eighth Circuit Law, As Opposed to Properly Applying Federal Circuit Law, in Determining that 5 U.S.C. § 701(a)(2) Applied to Appellant's Claims

In making its determination as to the claims regarding the application of the Administrative Procedure Act, the district court made two determinations.  The first determination was that the "Federal Circuit Court of Appeals has recognized that district court decisions in judicial review actions pursuant to the APA 'are taken to the pertinent regional circuit' not to the Federal Circuit Court of Appeals." [JA023–JA024, citing *Doe v. United States*, 372 F.3d 1308, 1312 (Fed. Cir. 2004).] This Appeal is being reviewed by this Court—the Federal Circuit Court of Appeals—because both the Eighth Circuit Court of Appeals and this Court have determined that this decision by the district court was incorrect.  [Order Denying Motion to Transfer at 1.]

The second decision by the district court, and the basis for this appeal, was that "the Federal Circuit Court of Appeals has not clearly stated that *the law* of the regional circuit, rather than Federal Circuit law, also applies to its decision, however. . . . and I will assume that Eighth Circuit law is controlling."  [JA024.] To the extent this Court has decided that this case is properly brought before the

Federal Circuit Court of Appeals and "arises under" the patent laws of the United States, the correct, applicable law is that of the Federal Circuit, not the Eighth Circuit Court of Appeals. *See Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (applying Federal Circuit precedent regarding the Administrative Procedure Act to an appeal from the United States District Court for the Eastern District of Virginia).

Consistent with this Court's decision on the Motion to Transfer, this Court's goals of "'bring [ing] about uniformity in the area of patent law' and in 'minimizing confusion and conflicts in the federal judicial system,'" would be served by application of Federal Circuit law. *Regents Of Univ. Of New Mexico v. Knight*, 321 F.3d 1111, 1123 (Fed. Cir. 2003) (quoting *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181 (Fed.Cir. 1996)). Here, in deciding that the APA claims sufficiently "arise under" the patent laws so as to give rise to appellate jurisdiction, this Court has decided that these issues are "unique to its exclusive jurisdiction." *Id.*

Finally, the application of Federal Circuit law, as opposed to Eighth Circuit law, is not without consequence as Federal Circuit law is clearer in its continued application of the "pragmatic considerations" approach which, according to the district court order, has been rejected by the Eighth Circuit. *See Almond Bros. Lumber Co. v. United States*, 721 F.3d 1320, 1326 (Fed. Cir. 2013) ("A decision is

16

more likely to be committed to an agency's discretion when it requires "a complicated balancing of a number of factors which are peculiarly within its expertise"; for example, questions of whether agency action is likely to be successful or whether a particular action best fits the agency's overall policies. (citations omitted)).

Accordingly, this Court should remand with instructions for the district court to apply the correct Federal Circuit law to the APA claims.

## B.   Regardless of the Applicable Law, the District Court Incorrectly Applied 5 U.S.C. § 701(a)(2) to Appellant's Claims

The District Court held that Appellant's APA claims should be dismissed for failing to state a claim upon which relief could be granted as the challenged "agency action is committed to agency discretion by law."  [JA040 (citing 5 U.S.C. § 702(a)(2)).]   In making this decision, the district court set aside Appellant's arguments under the "pragmatic considerations" approach and held that the Eighth Circuit Court of Appeals expressly rejected this standard in *State of N.D. ex rel. Bd. of Univ. & Sch. Lands v. Yeutter*, 914 F.2d 1031, 1032 (8th Cir. 1990). Instead, the district court focused solely on whether there was a "meaningful standard" by which to measure the USPTO's exercise of discretion under Rule 183. The district court also noted that the parties "have pointed to no 'settled course of adjudication' that could establish" such a meaningful standard.  [JA037.]   The Court held that there was no meaningful standard by which to measure the decision

17

and "that a Rule 183 decision is committed to agency discretion by law and, consequently, excepted from judicial review by § 701(a)(2)."  [JA037.]

In holding this way, the district court has effectively made Rule 183 a "Sword of Damocles" hanging over the head of all who deal with the USPTO. It is exactly such power that the APA is designed to protect against and, through this decision, the district court has endorsed Rule 183 as a safe harbor for any decision the USPTO looks to shield from judicial review.

The district court's decision should be reversed and remanded for further adjudication because (1) the Eighth Circuit Court of Appeals never expressly rejected the "pragmatic considerations" approach and the Supreme Court has applied such a standard to APA claims after *Yeutter*, and (2) the USPTO's decision to waive the service requirements of the regulations can be reviewed by the court as such a decision can be compared, through discovery, to other such decisions of the USPTO.

## V.    ARGUMENT

### A.    Standard of Review

This Appeal arises from the district court's grant of the Appellee's Motion to Dismiss.  [JA045.]  This Motion to Dismiss was filed as a Motion pursuant to Federal Rule of Civil Procedure 12(b)(1) but was converted by the district court to a Motion pursuant to 12(b)(6).  This Court reviews de novo a trial court's dismissal

for lack of jurisdiction for failure to state a claim upon which relief can be granted. *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1049 (Fed. Cir. 2012) cert. denied, 133 S. Ct. 126, 184 L. Ed. 2d 28 (2012).

**B.    Federal Circuit Law Applies to Appellant's Claims under the Administrative Procedure Act**

In its decision, the district court held that "the Federal Circuit Court of Appeals has not clearly stated that *the law* of the regional circuit, rather than Federal Circuit law, also applies to its decision, however. . . . and I will assume that Eighth Circuit law is controlling." [JA024.]  Unfortunately, this assumption did not have the guidance of the Eighth Circuit Court of Appeals decision to transfer the case to this Court based on the fact that the case "arises under" the patent laws of the United States of America.   Agreeing with the Eighth Circuit, this Court decided to retain jurisdiction over the case despite a Motion to Transfer by the Appellant.  [Order Denying Motion to Transfer at 1.]  The same set of facts that give rise to the purported jurisdiction in this Court—namely, whether the Rule 1.183 decision "arises under" under the patent laws—are informative, if not dispositive, as to whether the law of the regional circuit or the law of this Court applies.

In this case, (1) Federal Circuit law applies to the questions related to the Administrative Procedure Act, (2) Federal Circuit law differs materially from Eighth Circuit law as articulated by the District Court with respect to the applicable

standards under the Administrative Procedure Act, and (3) this Court should remand the case to the district court for the application of the correct law.

1.    *Federal Circuit Law is Applicable to the Claims as They Implicate the Patent Laws of the United States*

"In reviewing district court judgments in patent cases, we apply our own law with respect to patent law issues, but with respect to nonpatent issues we generally apply the law of the circuit in which the district court sits." *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (citing *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1440, 223 U.S.P.Q. 1074, 1087 (Fed. Cir. 1984) (en banc)).  This Court has held that,

> a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue 'pertain[s] to patent law, *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75, 223 U.S.P.Q. 465, 471 (Fed. Cir. 1984), if it "bears an essential relationship to matters committed to our exclusive control by statute," *Biodex Corp. v. Loredan Biomedical, Inc*., 946 F.2d 850, 858–59, 20 U.S.P.Q.2d 1252, 1259 (Fed. Cir.1991), or if it "clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction," *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212, 2 U.S.P.Q.2d 2015, 2018 (Fed. Cir.1987)

*Id.*; *see also Pregis Corp. v. Kappos*, 700 F.3d 1348, 1353 (Fed. Cir. 2012) ("Federal Circuit law applies to "issues of substantive patent law and certain procedural issues pertaining to patent law.").  The question in this case is whether the decision of the USPTO to unilaterally and without notice waive the service requirements of the regulations, and the Director's subsequent decision to invoke

Rule 1.183 after recognizing that the regulations had not been complied with, is a patent issue such that Federal Circuit law applies.

Appellant has argued to both this Court and the Eighth Circuit Court of Appeals that this case does not "arise under" the patent laws of the United States. This argument has failed in both instances and, in denying Appellant's Motion to Transfer, this Court specifically held,

> While the APA is not a patent law, this court nonetheless maintains jurisdiction over cases that raise a substantial question under the patent laws. . . . Here the Eighth Circuit concluded that this case raised such a question, and Target has not in the papers submitted shown that this conclusion should be disturbed.

[Dkt. 17 at 2.]  As this Court's Order suggests, any decision to retain jurisdiction would inherently require a finding that the review of the Director's Rule 1.183 decision under the APA raises a substantial question under the patent laws.[3]  This is the same Rule 1.183 decision that the Appellant is challenging under the APA.

As such, Federal Circuit law applies to the APA questions in this case and the district court erred in applying Eighth Circuit law.  Whether the Court considers this an application of the incorrect law or the application of an incorrect standard, remand with instructions to apply the appropriate law is required.

---

[3] Again, Appellant does not herein waive its arguments regarding the proper jurisdiction in this case.  However, to the extent this Court retains jurisdiction, and until such time as this case is transferred back to the Eighth Circuit for lack of jurisdiction, Appellant will rely on this Court's jurisdictional determination.

2.    *Federal Circuit Law Differs From Eighth Circuit Law in its Application of the Exception to the APA under § 701(a)(2)*

"There is a 'strong presumption' that Congress did not intend to prohibit all judicial review of a type of agency action." *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1358 (Fed. Cir. 2012) (citing *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 672, 106 S. Ct. 2133, 90 L. Ed. 2d 623 (1986); *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S. Ct. 1851, 44 L. Ed. 2d 377 (1975)). The claims at issue in this case were brought pursuant to the APA, specifically 5 U.S.C. § 706(2)(A), (B) which reads;

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
> . . .
>> (2) hold unlawful and set aside agency action, findings, and conclusions found to be-- . . .
>>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>> (B) contrary to constitutional right, power, privilege, or immunity;

There is a "narrow exception" to the APA's presumption of reviewability which applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Almond Bros. Lumber Co. v. United States*, 721 F.3d 1320, 1326 (Fed. Cir. 2013) cert. denied, 134 S. Ct. 2288, 189 L.

Ed. 2d 172 (2014) (citations omitted).  This exception is embodied in 5 U.S.C. §

701(a) which reads,

> (a) This chapter applies, according to the provisions thereof, except to
> the extent that--
>> (1) statutes preclude judicial review; or
>> (2) agency action is committed to agency discretion by law.

In applying this exception, the district court applied Eighth Circuit law in (1)

rejecting any analysis based on the "agency expertise" or "pragmatic

considerations" approach, [JA027], and (2) finding that "a Rule 183 decision is

committed to agency discretion by law and, consequently, excepted from judicial

review by § 701(a)(2)," [JA037].  This decision, based on Eighth Circuit law, is in

conflict with the law regarding the exceptions to the APA as articulated by Federal

Circuit precedent. *See Almond Bros. Lumber Co.*, 721 F.3d  at 1326.

The district court went to great length to set forth the standard for review

under the APA and the exceptions thereto.  [JA023–JA036.]  In doing so, the

district court first focused on the "agency expertise" or "pragmatic considerations"

approach.  According to Eighth Circuit law, such an approach requires a reviewing

court to consider "whether the challenged agency action is of the type Congress

intended be left to a **reasonable exercise of agency expertise** . . ." *Tuepker v.*

*Farmers Home Admin.*, 708 F.2d 1329, 1332 (8th Cir. 1983) (emphasis added).

The district court acknowledged this approach, but declined to apply it to the facts

set forth in the Complaint and the Motion to Dismiss based on the Eighth Circuit's

23

opinion in *North Dakota v. Yeutter*, 914 F.2d 1031, 1034–35 (8th Cir. 1990). In

*Yeutter*, the Eighth Circuit noted that the Supreme Court's decisions in *Heckler v.*

*Chaney* and *Webster v. Doe* "together render the *Tuepker* 'pragmatic

considerations' approach invalid." *Id.*; [JA027.] Whether the *Tuepker* decision by

the Eighth Circuit still stands in light of more recent Supreme Court decisions is an

important consideration. [*See infra* Section (V)(C) at n.4.] However, crucial to

this Court's review of the district court's decision is the fact that the decision in

*Yeutter*—incorrectly applied regional circuit law—is in conflict with recent

decisions by this Court—the correct and controlling law—with respect to applying

the exceptions under the APA.

As recently as 2013, in *Almond Bros. Lumber Co. v. United States*, this

Court held,

> A decision is more likely to be committed to an agency's discretion
> when it requires "**a complicated balancing of a number of factors**
> **which are peculiarly within its expertise**"; for example, questions of
> whether agency action is likely to be successful or whether a
> particular action best fits the agency's overall policies.

721 F.3d 1320, 1326 (Fed. Cir. 2013) (citations omitted) (emphasis added). This

language suggests that, in reviewing whether the APA exception under Section

701(a) applies, that whether the decision is "peculiarly within [the agencies]

expertise" is still a necessary inquiry in the court's review. *Id.* The district court,

in applying the regional circuit law, declined to analyze or review the facts of the Motion to Dismiss using this approach.  [JA027.]

In essence, a remand by this Court for application of Federal Circuit law is not without consequence as the district court's opinion expressly declines to apply a law and standard endorsed by this Court.  Further, it cannot be forgotten that this dismissal was ordered at the 12(b)(6) stage—a point in litigation that is highly fact intensive and a stage at which such facts are reviewed in the light most favorable to the non-moving party, the Appellant.  *Rack Room Shoes v. United States*, 718 F.3d 1370, 1376 (Fed. Cir. 2013) cert. denied, 134 S. Ct. 2287, 189 L. Ed. 2d 172 (2014). The district court opinion did not articulate any analysis under the correct law and standard and, as such, this Court should remand to the district court with instructions to apply this Court's APA precedent in analyzing the Motion to Dismiss.

3.   *This Court Should Remand for Review of the APA Claims under Federal Circuit Law*

The failure to analyze the APA claims and the exceptions thereto under the correct circuit law is worthy of remand in and of itself.  Greatly increasing the case for remand is the fact that the district court affirmatively declined to apply an analysis that is specifically endorsed by this Court.  The district court's decision conveys great, and arguably unchecked, power on the Director in making decisions under Rule 183.  This district court's decision, if it stands, would set a precedent

that could undermine notice provisions that are paramount to any review process. Provisions of notice and due process are protected with great vigilance by this and all courts and, to the extent the district court decision grants the Director the power to waive such provisions, the decision deserves the full consideration and application of this Court's law and precedent.  Such is especially true at the 12(b)(6) stage of litigation.

Accordingly, this Court should remand to the district court with instructions to apply the law of the Federal Circuit and all analysis embodied by this Court's precedent.

### C. Under Both Eighth Circuit and Federal Circuit Law, the Exception under 5 U.S.C. § 701(a)(2) Does Not Apply to Appellant's Administrative Procedure Act Claims

APA review is precluded by section 701(a)(2) when the "agency action is committed to agency discretion by law."  Both the Federal Circuit and the Eighth Circuit have recognized this to preclude review when the statute is written in such a way that there is no standard or law for the district court to apply upon review. *Almond Bros.*, 721 F.3d at 1326 ("This is a narrow exception to the APA's presumption of reviewability, and applies 'in those rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply."'"); *Tamenut v. Mukasey*, 521 F.3d 1000, 1003 (8th Cir. 2008).  "The absence of any statutory factors to guide the agency's decision-making process, in combination

26

with the open-ended nature of the inquiry, generally supports the conclusion that the 'agency action is committed to agency discretion by law.'" *Tamenut*, 521 F.3d at 1004.

As the district court noted, this requires a reviewing court, while keeping in mind the underlying presumption that agency action is reviewable in accordance with the APA, to determine whether there is a standard to guide the agency's discretion.   [JA036.]   Further, had the district court applied the correct Federal Circuit law, a proper application of the "agency expertise" analysis reveals that Appellant has plead sufficient facts to set forth a plausible claim for relief with regards to the Director's unilateral decision to waive the crucial notice requirement at issue in this case.

In this case, the district court erred in deciding that no standard exists by which to review the agency action.  The court further erred in failing to apply the "agency expertise" analysis which would have resulted in a denial of the Motion to Dismiss. Finally, it is relevant to both of these analyses that, in dismissing this case at the 12(b)(6) stage, the court deprived the Appellant of the necessary discovery to determine whether the Director's unilateral waiver of the notice statute pursuant to Rule 183 is an "extraordinary circumstance."

1.    *The District Court's Decision Should be Reversed as There is a Standard by Which Rule 183 Decisions Can Be Reviewed*

The district court went into great detail analyzing Eighth Circuit case law regarding prior APA decisions under section 701(a)(2).  In dismissing the case, the court concluded that "in extraordinary situations, when justice so requires" sets forth no factors by which the court can review the Director's decision.  [JA036.] However, this determination ignores the fact that "extraordinary situations" is a standard in and of itself.  Webster's dictionary defines "extraordinary" as "going beyond what is usual, regular, or customary."[4] This language, in and of itself, sets the standard for review.  The question for the court to ask is "whether the decision of the Director to waive the notice requirements pursuant to Rule 183" was in a situation that went "beyond what is usual, regular, or customary."

The court seems to recognize this in pointing out that "the parties have pointed to no 'settled course of adjudication' that could establish a meaningful standard . . ." [JA037.]  Unfortunately, this comment by the district court again highlights the stage of this litigation.  This case was dismissed upon a Motion to Dismiss pursuant to Rule 12(b)(6).  The Appellant has not had any opportunity to propound discovery which would tend to show that, in this case, the Director acted arbitrarily and capriciously in making the decision to waive the notice

---

[4] Merriam-Webster Online Dictionary. 2014. http://www.merriam-webster.com (13 June, 2014).

requirements pursuant to Rule 183.  However, Appellant has satisfied its burden under the pleading standards of *Twombly* and *Iqbal* to set forth sufficient allegations that would make the claim for relief plausible.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Here, the Appellant plead sufficient facts in the Amended Complaint which set forth a plausible claim that the Director's decision to waive a crucial notice provision, while recognizing EDNA's failure to comply with the regulations, on the sunset day of the statute, in order to maintain a reexamination must be arbitrary and capricious.  [JA187–JA193.]  These same facts tend to prove that this was not a situation that is "beyond usual, regular, or customary" situations faced by the USPTO and the Director on a regular basis, but only additional discovery would allow the Appellant to fully set forth the argument.

The district court erred in its determination that a standard for review does not exist and, regardless of which circuit's law applies, should be reversed and remanded to allow this case to continue past the pleading stage.

> 2.    *The District Court's Decision Should be Reversed as the Rule 183 Decision to Waive Notice Requirements is Not a Decision "Within Agency Expertise"*

Further, the district court did not give any weight to the "agency expertise" or "pragmatic considerations" approach, simply dismissing the approach as

inconsistent with Eighth Circuit law.[5]  As argued by the Appellant in its Resistance to the Motion to Dismiss, federal courts are very familiar with the standards regarding service of process and can easily discern whether the waiver in this case was arbitrary and capricious in violation of the APA.  *Printed Media Servs. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) (dismissal of case for failing to meet service requirements); *Dodco, Inc. v. American Bonding Co.*, 7 F.3d 1387, 1388 (8th Cir. 1993) (dismissal of case for failure to comply with service requirements of FED R. CIV. P. 4); *Semler v. Klang*, 603 F. Supp. 2d 1211 (D. Minn. 2009); see also FED R. CIV. P. 4 (2013).[6]

As such, the Director's decision regarding the suspension of rules regarding service of process was not a decision that was intended to be left to the "reasonable exercise of agency expertise" and the Court is able to easily assess whether the

---

[5] It is not entirely clear whether the Eighth Circuit's decision in *Yeutter* is still valid case law with respect to the "pragmatic considerations" approach.  The *Yeutter* case, decided in 1990, relies on Eighth Circuit interpretation of the Supreme Court cases in *Heckler* (1985) and *Doe* (1988) in determining that the "pragmatic considerations approach is no longer valid.  914 F.2d at 1034–35.  However, in 1993, the Supreme Court decided *Lincoln v. Vigil*, in which it once again recited the use of the "pragmatic considerations" or "agency expertise" approach.  508 U.S. 182, 190-192 (1993).  Further bolstering the argument that such an analysis is still relevant post-*Lincoln* is this Court's citation of the *Lincoln* decision in recent precedent applying the approach.  *See Almond Bros.,* 721 F.3d at 1326.
[6] Appellant cites Eighth Circuit case law in relation to the issues of service of process as such procedural rules do not "arise under" the patent laws of the United States and, therefore, this Court would look to the regional circuit law in reviewing such an argument.

Director's decision is consistent with the requirement that such suspension should only occur in an "extraordinary situation, when justice requires."

A decision that gives the Director the power to waive important notice provisions should not be taken lightly. As this case has been dismissed in its infancy, discovery that is relevant, if not dispositive, to answering the ultimate question as to whether the Director's decision to waive notice requirements was an "extraordinary situation" has not been initiated—let alone completed—to the extent necessary to give any party or the court the necessary facts to decide this case. The facts plead by the Appellant are sufficient to give rise to a plausible claim for judicial review under the APA of the Director's Rule 183 decision to unilaterally waive notice provisions—especially when such facts are viewed in the light most favorable to the Appellant.

As such, Appellant respectfully requests that this Court reverse the decision of the district court and allow this case to proceed past these initial stages and engage in discovery to determine whether the Director's decision in this case was based on "extraordinary circumstances" as compared to the "usual, regular, or customary" practices of the Director and the USPTO.

Further, "reversal is required if the district court 'engaged in a faulty legal analysis in applying the law to the facts and a correct application of the law to those facts might bring a different result.'" *Beech Aircraft Corp. v. EDO Corp.*,

990 F.2d 1237, 1245 (Fed. Cir. 1993) (quoting *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 164, 225 USPQ 34, 38 (Fed. Cir. 1985)).  Here, the district court failed to even give credence to the "agency expertise" analysis as endorsed and followed by this Court.  Had the district court done so, this case would have survived the Motion to Dismiss and continued on for further discovery.  As such, this Court should reverse the District Court's decision and remand for further proceedings.

## VI.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The appropriate remedy for the application of an incorrect legal standard is remand, "so that findings can be made in accordance with the applicable legal standard." *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 962 (Fed. Cir. 1997) (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 291–92, 102 S. Ct. 1781, 1791–92, 72 L. Ed. 2d 66 (1982)).  Further, "reversal is required if the district court 'engaged in a faulty legal analysis in applying the law to the facts and a correct application of the law to those facts might bring a different result.'" *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1245 (Fed. Cir. 1993) (quoting *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 164, 225 USPQ 34, 38 (Fed. Cir. 1985)).

Here, the district court applied the incorrect circuit law which warrants remand for application of this Court's standard of review and analysis with respect to the APA claims.

Alternatively, the court erred in dismissing this case for failure to state a claim upon which relief can be granted as Appellant has set forth sufficient factual allegations to show that the Director's decision is reviewable, does not constitute a decision made in "extraordinary circumstances," and is arbitrary and capricious in violation of the APA.  As such, this Court should reverse the district court's decision and remand for further proceedings.


Dated:  August 18, 2014                    Respectfully submitted,


                                           /s/      Edmund J Sease
                                           Edmund J. Sease
                                           Cory A. McAnelly
                                           McKEE, VOORHEES & SEASE, P.L.C.
                                           801 Grand Avenue, Suite 3200
                                           Des Moines, IA  50309-2721
                                           Telephone: (515) 288-3667
                                           Facsimile: (515) 288-1338
                                           Email:  ed.sease@ipmvs.com
                                           Email:  cory.mcanelly@ipmvs.com
                                           Email:  mvslit@ipmvs.com

                                           Attorneys for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August, 2014, I filed the foregoing

CORRECTED OPENING BRIEF OF APPELLANT TARGET TRAINING

INTERNATIONAL, LTD. with the United States Court of Appeals for the Federal

Circuit.  All counsel of record were electronically served via e-mail per Fed. R.

App. P. 25 and Fed. Cir. R. 25(a) and 25(b).


    /s/  Edmund J. Sease

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e): The brief contains 7,863 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6):  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 pt.

    /s/  Edmund J. Sease
Edmund J. Sease
Attorney for Appellant
Dated:  August 18, 2014

**ADDENDUM**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | | |
|---|---|---|
| TARGET TRAINING INTERNATIONAL, LTD., | ) | |
| | ) | CASE NO.  C13-3057-MWB |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | JUDGMENT |
| | ) | |
| MICHELLE K LEE, Deputy Under Secretary | ) | |
| for Commerce for Intellectual Property and | ) | |
| Director of the United States Patent and | ) | |
| Trademark Office, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the Court.  The issues have been decided and a decision has been rendered.

IT IS ORDERED THAT:

Plaintiff, Target Training International, Ltd., take nothing and this action is dismissed.

DATED: March 5, 2014

Robert L. Phelps
Clerk of Court, US District Court
Northern District of Iowa

S/src
By: Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

TARGET TRAINING
INTERNATIONAL, LTD.,

        Plaintiff,

vs.

MICHELLE K. LEE,[1] Deputy Under
Secretary for Commerce for Intellectual
Property and Director of the United
States Patent and Trademark Office,

        Defendant.

No. C 13-3057-MWB

MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTIONS TO
DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................**3**
     A.    *PTO Proceedings* ...............................................**3**
     B.    *The Action For Judicial Review* ..............................**9**

II.   **APPLICABLE STANDARDS** ............................................ **11**
     A.    *Dismissal For Lack Of Subject Matter Jurisdiction Or For*
         *Failure To State A Claim?*..................................... **11**
     B.    *Rule 12(b)(6) Standards For Dismissal For Failure To State*
         *A Claim*.......................................................... **16**

III.  **THE DIRECTOR'S MOTIONS TO DISMISS**.....................**20**
     A.    *Judicial Review Of The Rule 183 Decision*................. **20**
         1.    *Arguments of the parties*..............................**20**

---

[1] On January 13, 2014, Ms. Lee assumed the duties and functions of the Under Secretary of Commerce for Intellectual Property and Director of the USPTO, a position that is currently vacant. Accordingly, she is substituted as the proper defendant in this case, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, in the place of Margaret Focarino, the former Commissioner of Patents, who was named as the defendant in the plaintiff's Amended Complaint (docket no. 8).

      2.     *The § 701(a)(2) exception*.................................. 22
          a.    *Regional or Federal Circuit law?* ........................... 22
          b.    *Scope of the exception* ........................................ 23
          c.    *Applications of the exception* ................................. 26
      3.     *Applicability of the § 701(a)(2) exception to a Rule*
           *183 decision* ................................................. 32
  B.    *TTI's Due Process Claim* ....................................... 39
      1.     *Arguments of the parties*................................... 39
      2.     *Analysis* ................................................... 40
IV.   *CONCLUSION*............................................................ 43

A patent holder has brought this action for judicial review of a determination by the United States Patent and Trademark Office (PTO) that an alleged infringer's *inter partes* reexamination request was filed on the last day before the statute authorizing such proceedings expired. The patent holder argues that the alleged infringer's *inter partes* reexamination request was not filed until two days later, when the alleged infringer's "Corrected Certificate of Service" was actually filed with the PTO. The Director of the PTO has moved to dismiss "for lack of subject matter jurisdiction" pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Director argues that the PTO's determination of the filing date of the *inter partes* reexamination request was pursuant to a patent rule allowing the PTO to waive requirements not imposed by statute, but only by agency regulations, "in an extraordinary situation, when justice requires." *See* 37 C.F.R. § 1.183. The Director argues that a decision pursuant to this rule falls within the exception to judicial review for a decision "committed to agency discretion by law" in 5 U.S.C. § 701(a)(2) of the Administrative Procedures Act (APA).

# I.    INTRODUCTION

## A.    PTO Proceedings

Plaintiff Target Training International, Ltd., (TTI), an Iowa corporation with its headquarters and principal place of business in Scottsdale, Arizona, is the assignee and owner of United States Patent No. 7,249,372 (the '372 patent).[2] According to allegations in TTI's Amended Complaint, TTI is embroiled in litigation in the United States District Court for the Southern District of Texas with non-party Extended Disc North America, Inc. (EDNA), a United States company, and EDNA's franchisor, non-party Extended DISC International, Inc. (EDI), a Finnish corporation. In that action, TTI alleges a claim of contributory infringement of the '372 patent by EDNA, and claims of direct and contributory infringement of the '372 patent by EDI.

---

[2] Although the nature of the '372 patent does not enter into the parties' present dispute, I note in passing that the '372 patent or "Bonnstetter patent" is entitled "Network Based Document Distribution Method," and is described in the Abstract as follows:

> A method of distributing documents includes the step of displaying the documents on a web site. Responses to the documents are accepted on the web site. After the responses have been accepted, they are processed into a report and the report is returned to an interested party. It is to be understood that the surveys or other forms to be completed by users could be filled out on paper manually and the results could then be entered into a computer and sent to the web site. The reports could be electronically transmitted, and/or hard copies sent via mail, overnight, or through other modes.

Amended Complaint, Exhibit 1 (the '372 patent), Abstract.

3

EDI initiated an *ex parte* reexamination proceeding concerning the '372 patent with the PTO on April 4, 2011.  *See, e.g.,* Amended Complaint (docket no. 8), Exhibit 2 (Decision on Appeal of EDI's *ex parte* reexamination request).  The agency proceeding of interest here, however, is an *inter partes* reexamination (IPReex) proceeding concerning the '372 patent that EDNA purportedly filed with the PTO on September 14, 2012, and identified in PTO filings as "the '2307 proceeding."  TTI argues that EDNA's IPReex Request was actually filed on September 16, 2012, because that was the date that all parts of EDNA's IPReex Request, including an adequate certificate of service, were filed with the PTO.  TTI alleges that the actual filing date of EDNA's IPReex Request was one day after the statute authorizing an IPReex proceeding expired and was replaced with a new statutory scheme authorizing an *inter partes* review (IPR) proceeding.[3]

---

[3] As the Federal Circuit Court of Appeals explained in *Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013),

> In 2011, Congress replaced inter partes reexamination with a new proceeding called inter partes review. *See* Leahy–Smith America Invents Act ("AIA"), Pub. L. No. 112–29, § 6(a), 125 Stat. 284, 299–304 (2011), *to be codified at* 35 U.S.C. §§ 311–319 (2013). The purpose of this reform was to "convert[ ] inter partes reexamination from an examinational to an adjudicative proceeding". . . .

*Abbott Labs.*, 710 F.3d at 1326.  More specifically,

> Unlike the prior *inter partes* reexamination proceeding, which was accomplished largely through submissions before a PTO examiner, IPR under the AIA is conducted before a panel of three of the technically-trained administrative judges comprising the Patent Trial and Appeal Board ("PTAB").

*Rensselaer Polytechnic Inst. v. Apple, Inc.*, No. 1:13–CV–0633 (DEP), 2014 WL 201965, *2 (N.D.N.Y. Jan. 15, 2014) (slip op.) (citing 35 U.S.C. § 6(a), (c)).  As to

4

initiating such a proceeding,

> A petition may be filed by anyone who is not the patent owner
> as long as the petitioner has not filed a civil action challenging
> the validity of the patent, the petition is filed less than one
> year after the petitioner was served with a complaint alleging
> infringement of the patent, or the petitioner is not estopped
> from challenging the claims. 37 C.F.R. § 42.101

*Endotach, L.L.C. v. Cook Medical, Inc.*, No. 1:13–cv–01135–LJM–DKL, 2014 WL
301498, *3 (S.D. Ind. Jan. 28, 2014) (slip op.).

The new IPR proceedings are conducted within a fairly tight timeframe:

> Once an entity or person files a petition for IPR, the USPTO
> has three months from the date the patent holder files a
> response to the petition to decide whether or not to institute a
> review proceeding. 35 U.S.C. § 314(b). . . . Generally, the
> IPR process takes between eighteen months and two years to
> complete, presuming there is no appeal. 35 U.S.C. §§ 314(b)
> & 316(a)(11).

*Endotach, L.L.C. v. Cook Medical, Inc.*, No. 1:13–cv–01135–LJM–DKL, 2014 WL
301498, *3 (S.D. Ind. Jan. 28, 2014) (slip op.).

A federal district court has observed, "IPR affords at least three advantages to the
parties and the district court in any corollary civil action":  (1) speedier resolution; (2)
"a more stringent standard ['a reasonable likelihood that the petitioner would prevail with
respect to at least 1 of the claims challenged in the petition'] than the previous 'substantial
new question of patentability' and thus provides some assurance that the delay suffered
as a result of IPR will be worthwhile"; and (3) "IPR imposes an estoppel requirement
that precludes the petitioner from asserting invalidity, during a later civil action, 'on any
ground that the petitioner raised or reasonably could have raised during that inter partes
review,' 35 U.S.C. § 315(e)(2), [and] [t]his critical limitation results in a more
streamlined litigation and reduces the likelihood of inconsistent judgments."
*PersonalWeb Techs., L.L.C. v. Facebook, Inc.*, Nos.: 5:13–CV–01356–EJD; 5:13–CV–
01358–EJD; 5:13–CV–01359–EJD, 2014 WL 116340, *2 (N.D. Cal. Jan. 13, 2014)

More specifically, TTI alleges that EDNA filed its IPReex Request concerning the '372 patent pursuant to then-existing versions of 35 U.S.C. §§ 311 and 312, with a separate "Certificate of Service" stating that service of the Request had been made on TTI by first class mail on September 14, 2012. The Director states, in her brief in support of her original Motion To Dismiss (docket no. 7-1), at 2, the PTO found in administrative proceedings, *see* Amended Complaint, Exhibit 5 (decision on request for reconsideration at 6), and TTI apparently does not dispute, that EDNA's initial "service" of its IPReex Request was actually by parcel post, but applicable regulations required service by first class mail. TTI alleges that, on September 15, 2012, the PTO's electronic filing system indicated the electronic filing of a "Second Certificate of Service," stating that "a second copy of the Request" had been served by mailing a document (with a stated tracking number) on September 14, 2012. On September 16, 2012, the PTO's electronic filing system indicated the electronic filing of a "Corrected Certificate of Service," stating that copies of EDNA's IPReex Request had been served by first class mail on September 14, 2012. Consequently, TTI alleges that the PTO initially assigned EDNA's IPReex Request a filing date of September 16, 2012.

---

(slip op.); *Endotach, L.L.C.*, 2014 WL 301498 at *3 ("The statute provides that the USPTO will not grant the petition unless 'there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.'" (citing 35 U.S.C. § 314(a)). Also, "one of [the IPR proceeding's] touted 'improvements' over the former proceeding is to allow the limited use of depositions," and others are that it allows discovery and authorizes "section 24 subpoenas." *Abbott Labs.*, 710 F.3d at 1326 (citing H.R.Rep. No. 112–98, pt. 1, at 46–47 (2011), and AIA § 6(a), 125 Stat. at 302, *to be codified at* § 316(a)(5)(A)).

The present action for judicial review does not require me to determine what effect the replacement of IPReex actions with IPR actions might have on the underlying patent dispute between TTI and EDNA. Nevertheless, it is plain that whether or not EDNA filed a timely IPReex action is of considerable importance to TTI.

6

TTI alleges, however, that, at some point, the PTO unilaterally, without notice, and without explanation adjusted the records regarding EDNA's IPReex Request to reflect a filing date of September 14, 2012, the last day that the IPReex statute was in force. Consequently, on November 14, 2012, TTI filed its first petition (a "Rule 181 Petition," pursuant to 37 C.F.R. § 1.181) requesting that the PTO change the filing date of EDNA's IPReex Request from September 14, 2012, back to September 16, 2012. On November 28, 2012, EDNA filed a petition opposing TTI's "Rule 181 Petition." Amended Complaint, ¶¶ 37-40, Exhibit 3 (Decision On Petitions Under 37 CFR 1.181 at 2). On December 7, 2012, while TTI's "Rule 181 Petition" was pending, the PTO issued an order granting IPReex of the '372 patent in the '2307 proceeding. *Id.* at ¶ 47, Exhibit 3 (Decision On Petitions Under 37 CFR 1.181 at 2). The Director of the PTO's Central Reexamination Unit eventually denied TTI's "Rule 181 Petition" on June 5, 2013. *Id.* at ¶ 51, Exhibit 3 (Decision On Petitions Under 37 CFR 1.181 at 7).

On June 25, 2013, TTI filed a Request for Reconsideration of the June 5, 2013, denial and decision. *Id.* at ¶ 55, Exhibit 4. On September 6, 2013, the Director of the Central Reexamination Unit dismissed TTI's Request for Reconsideration and maintained the "reassigned" filing date of September 14, 2012. *Id.* at ¶ 61, Exhibit 5 (Decision On Petitions Under 37 CFR 1.181 (decision on TTI's Request for Reconsideration)). The "Decision" section of the September 6, 2013, ruling stated the following, in its entirety:

> Patent owner (petitioner) requests reinstatement of September 16, 2012 as the filing date of the request. Petitioner disputes affording the Request a filing date of September 14, 2012 because the certificate of service through first class mail was not received by the Office on the same day the service itself was rendered. Petitioner argues that there is no authority in the Rules that Reexamination Request[s] can be filed piece-meal at the Office and obtain a filing date that precedes the last piece or part to be filed. Petitioner supports these

7

arguments with the language of 37 CFR § 1.915 and 37 CFR § 1.919.

It is agreed that Rule 915 requires third party requester to include a certificate of service in the Request and that Rule 919 requires that all parts of the Request must be received by the Office to afford a filing date.

However, it is not agreed that the Office lacks authority to afford the '2307 proceeding a filing date of September 14, 2012. As stated in Rule 183, "[I]n an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, *sua sponte*, or on petition of the interested party." The statue (35 USC 311) governing the filing for *inter partes* reexamination does not require the filing of a certificate of service with the Request. The filing and the manner of filing the certificate of service are solely required by regulation. As such, these requirements can be suspended or waived under the authority and conditions set forth in Rule 183.

In the instant proceedings, the record is clear that patent owner was serviced [sic], not once but twice, with the Request on September 14, 2012. Specifically, patent owner was initially serviced [sic] by way of parcel post through the USPS (as evidenced by "SECOND CERTIFICATE OF SERVICE" filed September 14, 2012) and served again by way of first class mail through the USPS (as evidenced by "CORRECTED CERTIFICATE OF SERVICE" filed September 16, 2012). As such, the Office deemed, *sua sponte*, under the authority of Rule 183 that justice required the '2307 proceeding be afforded a filing date of September 14, 2012.

Accordingly, patent owner's petition is **dismissed**.

Amended Complaint, Exhibit 5 (Decision On Petitions Under 37 CFR 1.181 (decision on TTI's Request for Reconsideration), 5-6 (emphasis in the original)).

8

### B.     *The Action For Judicial Review*

TTI now seeks judicial review, pursuant to the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-06, of the PTO's refusal to reinstate a filing date of September 16, 2012, for EDNA's IPReex Request.  In both its original Complaint (docket no. 1), filed October 21, 2013, and its Amended Complaint (docket no. 8), filed January 9, 2014, TTI asserts two causes of action.  The first part of TTI's first cause of action is for judicial review of the PTO's denial of TTI's "Rule 181 Petition," that is, the September 6, 2013, denial of TTI's petition for reconsideration of the PTO's determination of the filing date of EDNA's IPReex Request.  TTI alleges that the PTO's decision to change the filing date of EDNA's IPReex Request from September 16, 2012, to September 14, 2012, without notice to TTI, was contrary to TTI's constitutional right to notice and due process, was unlawful, and should be set aside under the APA, 5 U.S.C. § 706(2)(B).  In the second part of its first cause of action, TTI also alleges that the PTO's refusal to reinstate the September 14, 2012, filing date, based on the PTO's authority under "Rule 183," 37 C.F.R. § 1.183, was arbitrary, capricious, an abuse of discretion, and should be set aside under the APA, 5 U.S.C. § 706(2)(A).  TTI's second cause of action is for a stay of agency proceedings or decision on EDNA's IPReex proceeding pending review by this court of the PTO's challenged determination of the filing date of EDNA's IPReex Request.

On December 23, 2013, in response to TTI's original Complaint, the Director filed a Motion To Dismiss (docket no. 7) "for lack of subject matter jurisdiction" pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  In that Motion, the Director asserted that this court lacks subject matter jurisdiction over TTI's action for judicial review, because the challenged agency decision is expressly "committed to agency discretion by law" and, thus, unreviewable, pursuant to 5 U.S.C. § 701(a)(2).  On January 9, 2014, TTI filed both its Response To Defendant's Motion To Dismiss Pursuant

To Federal Rule Of Civil Procedure 12(b)(1) (docket no. 9) and its Amended Complaint (docket no. 8), which TTI filed as a matter of course pursuant to Rule 15(a)(1)(B). On January 16, 2014, the Director filed a Reply (docket no. 10), in further support of its Motion To Dismiss.

Also on January 16, 2014, out of concern that the filing of TTI's Amended Complaint had rendered moot her Motion To Dismiss, the Director filed her Second Motion To Dismiss (docket no. 11). In her Second Motion To Dismiss, the Director opined that the Amended Complaint did not appear to change materially the allegations in TTI's original Complaint and offered nothing in response to the Director's original Motion To Dismiss. Consequently, rather than file a duplicate Motion To Dismiss and supporting brief as her Second Motion To Dismiss, the Director incorporated by reference into her Second Motion To Dismiss her original Motion To Dismiss, supporting brief, and Reply. On January 27, 2014, TTI filed its Opposition To Defendant's Second Motion To Dismiss (docket no. 12). In its Opposition, TTI explained that it had filed its Amended Complaint "to correct certain informalities in citation of statutes and regulations," and expressly agreed with the Director's opinion that the Amended Complaint does not materially change the issues before the court on the Director's Motions To Dismiss. Consequently, TTI also incorporated into its Opposition To Defendant's Second Motion To Dismiss all of the briefing and arguments in TTI's original Response To Defendant's Motion To Dismiss.

In its Response To Defendant's Motion To Dismiss and its Opposition To Defendant's Second Motion To Dismiss, TTI requests oral arguments on the Director's Motions To Dismiss. TTI argues that oral arguments would provide background on the earlier litigation and PTO re-examination, significantly clarify the issues in this case, and be helpful in assisting me in my decision. My crowded schedule does not allow for the timely scheduling of oral arguments on the pending Motions To Dismiss. More

10

importantly, I find that the pertinent issues are narrow legal ones on which oral arguments and additional background on the earlier litigation and PTO re-examination are unlikely to have any benefit. Therefore, the pending Motions To Dismiss are deemed fully submitted on the parties' written submissions.

## II.    APPLICABLE STANDARDS

### A.    Dismissal For Lack Of Subject Matter Jurisdiction Or For Failure To State A Claim?

As noted above, the Director's Motions To Dismiss seek dismissal "for lack of subject matter jurisdiction." Subject matter jurisdiction is a "threshold question" of law to be determined by the court. *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013). Because federal courts are courts of limited jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013) (noting that the burden of proving subject matter jurisdiction "may not be shifted to another party"). For the same reason, "parties may not enlarge that jurisdiction by waiver or consent." *United States v. Afremov*, 611 F.3d 970, 975 (8th Cir. 2010). To the contrary, "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (citing U.S. CONST., art. III, § 1).[4]

---

[4] Article III subject matter jurisdiction—encompassing such matters as standing, *see, e.g., Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013), and ripeness, *see, e.g., Kennedy v. Ferguson*, 679 F.3d 998, 1001 (8th Cir. 2012)—clearly is not at issue here.

The Director seeks dismissal of TTI's action "for judicial review for lack of subject matter jurisdiction" pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which authorizes such a pre-answer motion. FED. R. CIV. P. 12(b)(1). The Director contends that this court lacks subject matter jurisdiction, because the PTO's determination to adjust the filing date of EDNA's IPReex Request to September 14, 2012, falls within the exception to judicial review for a decision "committed to agency discretion by law" in 5 U.S.C. § 701(a)(2) of the APA.

The problem with this purported challenge to subject matter jurisdiction—albeit a problem that was not addressed by either TTI or the Director—is that "[t]he APA does not create federal subject matter jurisdiction. Rather, a federal court has federal question jurisdiction under 28 U.S.C. § 1331 over challenges to federal agency action." *Iowa League of Cities v. EPA*, 711 F.3d 844, 840 n.10 (8th Cir. 2013) (concluding that federal subject matter jurisdiction for the judicial review action in that case required a determination of whether the action for judicial review had been filed within 120 days from the date of "promulgation" of an effluent limitation under the Clean Water Act, as required by 33 U.S.C. § 1369(b)(1), not based on the waiver of sovereign immunity for suits seeking judicial review of agency actions made reviewable by statute in the APA, 5 U.S.C. § 704).

More specifically,

> The APA is not an independent jurisdictional provision. *Califano v. Sanders*, 430 U.S. 99, 105–06, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The APA is a procedural statute that provides no substantive requirements but merely provides the framework for judicial review of agency action. *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir.1996). The Supreme Court's recent proscription against "drive-by jurisdictional rulings" compels us to make this distinction in the interest of facilitating the clarity sought by the Court. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, –

12

> ---, 130 S.Ct. 1237, 1244, 176 L.Ed.2d 17 (2010) (quotation
> omitted); *see also Oryszak v. Sullivan*, 576 F.3d 522, 524–25
> (D.C.Cir.2009) (explaining that a federal court has
> jurisdiction under 28 U.S.C. § 1331 to hear a claim under the
> APA, but because the APA does not apply to agency action
> committed to agency discretion by law, a plaintiff who
> challenges such an action cannot state a claim under the APA
> and the court will properly grant a motion to dismiss the
> complaint for failure to state a claim). *When a plaintiff*
> *complains about an action that is committed to agency*
> *discretion by law, it does not mean that a court lacks subject*
> *matter jurisdiction over the claim. Instead, it means that there*
> *is no law to apply because the court has no meaningful*
> *standard against which to judge the agency's unfettered*
> *exercise of discretion. Heckler v. Chaney*, 470 U.S. 821, 830,
> 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Oryszak*, 576 F.3d
> at 526.

*Ochoa v. Holder*, 604 F.3d 546, 549-50 (8th Cir. 2010) (emphasis added).  Thus, an agency's motion to dismiss an action for judicial review on the ground that the challenged agency action is "committed to agency discretion by law," and, as such, is excepted from judicial review pursuant to § 701(a)(2) of the APA, is not a Rule 12(b)(1) challenge to subject matter jurisdiction.  Rather, it is a challenge to the plaintiff's ability to state a claim upon which relief can be granted.  *Id.* (citing *Oryszak*, 576 F.3d at 524-25, for this proposition).

The en banc decision of the Eighth Circuit Court of Appeals in *Tamenut v. Mukasey*, 521 F.3d 1000, 1005 (8th Cir. 2008) (en banc), concerning the effect of § 701(a)(2) on review of agency action—on which both TTI and the Director relied in their briefs—is not to the contrary.  As a panel of the court subsequently explained in *Ochoa*,

> In *Tamenut v. Mukasey*, 521 F.3d 1000, 1005 (8th
> Cir.2008) (en banc), we held that "the BIA's decision whether
> to reopen proceedings on its own motion under 8 C.F.R.

> § 1003.2(a) is committed to agency discretion by law" and is
> thus unreviewable by an appellate court. In *Tamenut*, after
> making this determination we concluded that we "lack[ed]
> jurisdiction" over Tamenut's challenge to the BIA and we
> dismissed the petition accordingly. 521 F.3d at 1005. *More*
> *precisely, the dismissal in* Tamenut, *while the proper*
> *disposition, was due to our inability to review an agency*
> *action "committed to agency discretion by law" under*
> *§ 701(a)(2) of the Administrative Procedure Act (APA), not*
> *because we lacked jurisdiction. Id*. at 1003.

*Ochoa*, 604 F.3d at 549 (emphasis added).  Indeed, nowhere does the majority decision

in *Tamenut* refer to lack of "subject matter jurisdiction," rather than simply to lack of

"jurisdiction," or to Rule 12(b)(1) of the Federal Rules of Civil Procedure, as the basis

for dismissal.

Although the Director has relied on Rule 12(b)(1) and "lack of subject matter

jurisdiction," rather than Rule 12(b)(6) and "failure to state a claim upon which relief

can be granted," as the ostensible bases for her Motions to Dismiss, nowhere do her

arguments appear to turn on Rule 12(b)(1) standards rather than Rule 12(b)(6) standards.[5]

---

[5] Where, as here, the movant limits a purported jurisdictional attack pursuant to
Rule 12(b)(1) to the plaintiff's complaint, the motion is a "facial challenge" to subject
matter jurisdiction.  *Jones*, 727 F.3d at 846 (citing *BP Chems., Ltd. V. Jiangsu Sopo
Corp.*, 285 F.3d 677, 680 (8th Cir. 2002)).  On a facial challenge, "'the court restricts
itself to the face of the pleadings, and the non-moving party receives the same protections
as it would defending against a motion brought under Rule 12(b)(6).'"  *Id*. (quoting
*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

Yet, even on a Rule 12(b)(6) motion, in addition to factual allegations in the
complaint itself, the court may consider matters attached to, incorporated into, or
embraced by the complaint, and certain other matters, as explained more fully in the body
of this decision.  Consideration of such matters on a Rule 12(b)(1) "facial" challenge to
subject matter jurisdiction is also consistent with *Osborn v. United States*, 918 F.2d 724

14

Rather, her entire argument turns on whether or not the "committed to agency discretion by law" exception to judicial review in 5 U.S.C. § 701(a)(2) is applicable. The same is true of TTI's response.

Therefore, I will consider the Director's Motions To Dismiss under appropriate Rule 12(b)(6) standards, not under Rule 12(b)(1) standards. *See Ochoa*, 604 F.3d at 549.

---

(8th Cir. 1990), the seminal Eighth Circuit decision distinguishing between "facial" and "factual" challenges to subject matter jurisdiction. *See* 918 F.2d at 729 n.6 ("A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'"). In *Osborn*, the court explained:

> [W]hen the district court's decision to dismiss for lack of subject matter jurisdiction is based on the complaint alone, *or on the complaint supplemented by undisputed facts evidenced in the record,* the appellate court's review is "limited to determining whether the district court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed." [*Williamson v. Tucker*,] 645 F.2d [404,] 413 [(5th Cir.), *cert. denied*, 454 U.S. 897 (1981)]. If the court relied, however, on its own determination of disputed factual issues, the appellate court must then review those findings under the "clearly erroneous" standard. *Id. See also Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 732 (11th Cir.1982) (the clearly erroneous standard governs findings of jurisdictional fact).

*Osborn*, 918 F.2d at 730 (emphasis added). Thus, it is a request to resolve disputed factual issues, not whether the court considers matters attached to, incorporated into by reference, or embraced by the complaint that distinguishes a "factual" challenge from a "facial" challenge to subject matter jurisdiction under Rule 12(b)(1).

15

### B. *Rule 12(b)(6) Standards For Dismissal For Failure To State A Claim*

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Although factual "plausibility" is ordinarily the central focus of Rule 12(b)(6) motions to dismiss under this *Twom-bal* standard,[6] various federal Circuit Courts of

---

[6] The "*Twom-bal* standard" is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Appeals have expressly recognized, and the Eighth Circuit Court of Appeals has suggested, that the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory, in addition to permitting dismissal for factual implausibility. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L.C. v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory"); *cf. Brown v. Mortgage Electronic Registration Sys., Inc.*, 738 F.3d 926, 933 n.7, 934 (8th Cir. 2013) (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate, because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based). It is precisely the lack of a cognizable legal theory for judicial review of an agency action "committed to agency discretion by law" pursuant to § 701(a)(2) that is the proper basis for the Director's Motions To Dismiss in this case.[7]

---

[7] In cases in which factual "plausibility" really is the determinative issue, courts consider "plausibility" under the *Twom-bal* standard by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some

17

Nevertheless, further discussion of the factual "plausibility" standard under *Twom-bal* is illuminating here, because it clarifies what parts of the record I may properly consider. In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)). Thus, courts may consider "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders,

---

later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id*. at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).

18

items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

Here, some of the exhibits attached to the Director's first Motion To Dismiss are also attached to TTI's Amended Complaint. *Compare* Director's Motion To Dismiss (docket no. 7), Exhibits F and G; *with* Amended Complaint, Exhibits 3 and 5. Other exhibits attached to the Director's first Motion To Dismiss are copies of documents filed in the agency proceedings before the PTO and each is expressly referenced in TTI's Amended Complaint. *Compare* Director's Motion To Dismiss (docket no. 7), Exhibits A-E; *with* Amended Complaint, ¶¶ 32, 36, 37-39, 40-46. TTI also states in its Response To Defendant's Motion To Dismiss (docket no. 9) at 2, in which it asserts that the Director is making only a "facial" challenge to subject matter jurisdiction, that the exhibits attached to and referenced in the Motion To Dismiss "are not in dispute and are not outside the pleadings." TTI then argues that such documents embraced by the pleadings, whose content is alleged in the Complaint and whose authenticity is not challenged, may be considered, even if they are not physically attached to the pleading, citing *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012), which states Rule 12(b)(6) standards.

Thus, TTI does not dispute, and I conclude, that I may properly consider all of the exhibits attached to the Amended Complaint and to the Director's first Motion To Dismiss in resolving the question of whether or not TTI's action for judicial review fails to state a claim upon which relief can be granted. All of these documents are "undisputed" and are "embraced" by the Amended Complaint. *Whitney*, 700 F.3d at 1128; *Miller*, 688 F.3d at 931 n.3.

19

### III.    THE DIRECTOR'S MOTIONS TO DISMISS

Having established the appropriate basis and standards for the Director's Motions To Dismiss, I turn to the merits of those motions.  In her Motions To Dismiss, the Director seeks dismissal of TTI's claim for judicial review of the PTO's September 6, 2013, decision pursuant to Rule 183 under the APA on the ground that the challenged decision is unreviewable under § 701(a)(2).  She also contends that TTI's "due process" claim is not colorable, so that it cannot overcome the exception to judicial review pursuant to the APA.  I will consider these arguments in turn.

### A.    Judicial Review Of The Rule 183 Decision

#### 1.    Arguments of the parties

The Director argues that the PTO's decision setting the filing date of EDNA's IPReex action pursuant to Rule 183 is unreviewable, because the APA does not authorize judicial review of everything that an agency may do.  Specifically, the Director argues that the APA expressly excepts from judicial review agency actions that are "committed to agency discretion by law" in 5 U.S.C. § 701(a)(2).  She contends that § 701(a)(2) bars judicial review when the language of a statute or regulation that the agency relied upon employs such broad terms that there is no meaningful standard against which to judge the agency's exercise of discretion.  She argues that, here, the PTO relied on its Rule 183 authority,[8] which permits the agency to waive requirements imposed only by regulations,

---

[8] Both parties have been sloppy in their references to "rules," "sections," and "regulations."  Patent "Rule 183" is 37 C.F.R. § 1.183.  Contrary to the parties' frequent references to "section 183," there is no "section 183" in the pertinent regulations in Title 37 of the Code of Federal Regulations, nor is there any "§ 183" of the Patent Act, 35 U.S.C. § 1 *et seq.*, that might be pertinent here.

not by statute, "[i]n an extraordinary situation, when justice requires," to deem EDNA's IPReex Request as filed on September 14, 2012, rather than September 16, 2012, when EDNA filed the "Corrected Certificate Of Service" that completed EDNA's IPReex Request. The Director argues that the "highly deferential" standard stated in Rule 183 is not materially different from standards that the Supreme Court and the Eighth Circuit Court of Appeals have found to be sufficiently deferential to prohibit judicial review. She points out that the Federal Circuit Court of Appeals has expressly held that Rule 183 is cast in discretionary terms. She argues that there is simply no basis for this court to determine whether the challenged PTO decision concerning the filing date of EDNA's IPReex Request was arbitrary or capricious or otherwise reversible under the APA.

In response, TTI argues that there is a strong presumption that agency actions are reviewable under the APA. TTI contends that, in deciding whether § 701(a)(2) excepts a particular agency action from judicial review, a court must review whether the challenged agency action is of the type that Congress intended to be left to a reasonable exercise of agency expertise. Thus, TTI argues that a court should also assess the particular nature of the decision in order to decide whether it is a "reasonable exercise of agency expertise." TTI asserts that the inquiry here is whether the PTO's decision to deny TTI's "Rule 181 Petition" based on the PTO's authority under Rule 183 is discretionary, without standard or guidance, and intended to be left to a "reasonable exercise of agency expertise." TTI contends that it was not such a decision, however, because it should have been guided by the standards set forth in the regulation, which allow suspension of an agency regulation only in an "extraordinary situation, when justice requires." TTI argues that application of this standard to a regulation related to service of process and notice is not an issue that requires deference to a "reasonable exercise of agency expertise." Rather, TTI argues that the court could easily assess whether or not the agency's decision is consistent with the "extraordinary situation, when justice

21

requires" standard. TTI then distinguishes decisions on which the Director relies on the grounds that they did not actually involve determinations of whether application of Rule 183 was unreviewable pursuant to § 701(a)(2) or did not address Rule 183 at all. TTI argues that rules for service of process and waiver of such rules are not so specific to the PTO that they require the "reasonable exercise of agency expertise."[9]

In reply, the Director argues that TTI has failed to rebut the grounds for dismissal set forth in her Motions and brief. As to TTI's new or unanticipated arguments, the Director contends that TTI relies on overruled precedent when it asserts that the court must consider whether the challenged decision involved "agency expertise" when assessing the scope of the § 701(a)(2) exception. Thus, the Director reiterates that the only question is whether the standard for the agency's decision involved a "meaningful standard against which a court could judge the agency's exercise of its discretion." The Director argues that Rule 183 provides no such "meaningful standard" and states no "objective criteria," so that it leaves to the PTO's discretion the determination of whether an "extraordinary situation" exists and whether "justice requires" the waiver of requirements not imposed by statute.

### 2. The § 701(a)(2) exception

#### a. Regional or Federal Circuit law?

To determine whether or not TTI's action for judicial review is legally cognizable, despite the § 701(a)(2) exception to judicial review, I must first examine the scope of that exception. I note that the Federal Circuit Court of Appeals has recognized that district

---

[9] Leaping prematurely to the merits, TTI also argues that the agency's decision to deny TTI's "Rule 181 Petition" and to invoke the PTO's power under Rule 183 to waive requirements for service of process for an IPReex action is arbitrary and capricious, that the PTO did not set forth any adequate basis for this decision, and that, upon review, it is clear that the PTO's decision runs afoul of the requirements of Rule 183.

22

court decisions in judicial review actions pursuant to the APA "are taken to the pertinent regional circuit," not to the Federal Circuit Court of Appeals. *Doe v. United States*, 372 F.3d 1308, 1312 (Fed. Cir. 2004). The Federal Circuit Court of Appeals has not clearly stated that *the law* of the regional circuit, rather than Federal Circuit law, also applies to such decisions, however. Here, the parties do not contend that Federal Circuit law is controlling on the scope of the § 701(a)(2) exception, and I will assume that Eighth Circuit law is controlling.

> ### b.    *Scope of the exception*

The Eighth Circuit Court of Appeals, en banc, recognized that "[t]here is a 'basic presumption of judicial review' of final agency action, but this presumption may be overridden in certain circumstances." *Tamenut v. Mukasey*, 521 F.3d 1000, 1003 (8th Cir. 2008) (en banc) (internal citations omitted). The "certain circumstances" in which the presumption of judicial review may be "overridden" are set out in 5 U.S.C. § 701(a) of the APA. *Id.*

Section 701(a) provides as follows:

> **(a)** This chapter applies, according to the provisions thereof, except to the extent that—
>
> > **(1)** statutes preclude judicial review; or
> >
> > **(2)** agency action is committed to agency discretion by law.

5 U.S.C. § 701(a). "Even where a jurisdiction-stripping statute does not preclude review of a particular agency action [pursuant to § 701(a)(1)], . . . [a court] must still consider whether that agency action is 'committed to agency discretion by law' under § 701(a)(2) of the APA." *Tamenut*, 521 F.3d at 1003 (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

As the en banc court also explained,

The "committed to agency discretion" exception is a "very narrow exception" that "is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 79–752, at 26 (1945)), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The Supreme Court has explained that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830, 105 S.Ct. 1649. The application of the "committed to agency discretion" exception to judicial review "requires careful examination of the statute on which the claim of agency illegality is based." *Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). In conducting this examination, we consider "both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Secretary of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C.Cir.2006) (internal quotation omitted). The absence of any statutory factors to guide the agency's decision-making process, in combination with the open-ended nature of the inquiry, generally supports the conclusion that the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Southern Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 455, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); *State of North Dakota v. Yeutter*, 914 F.2d 1031, 1035 (8th Cir.1990).

*Tamenut*, 521 F.3d at 1003-04; *accord Friends of the Norbeck v. U.S. Forest Serv.*, 661 F.3d 969, 975 (8th Cir. 2011).

Because the determination of whether a statute or regulation commits the challenged agency decision "to agency discretion by law" turns on whether or not there is sufficient guidance for the agency's exercise of its discretion, "this limitation does not bar judicial review if the agency has an established policy governing its exercise of

24

discretion." *Abdelwahab v. Frazier*, 578 F.3d 817, 821 n.6 (8th Cir. 2009) (citing *INS v. Yang*, 519 U.S. 26, 32 (1996)). Indeed, as the Supreme Court explained in *Yang*,

> Though the agency's discretion is unfettered at the outset, if it announces and follows—*by rule or by settled course of adjudication*—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as "arbitrary, capricious, [or] an abuse of discretion" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

*Yang*, 519 U.S. at 32 (emphasis added); *accord Liadov v. Mukasey*, 418 F.3d 1003, 1010-11 (8th Cir. 2008). The Eighth Circuit Court of Appeals has also recognized that "judicial review may be circumscribed 'where a procedural rule is designed primarily to benefit the agency in carrying out its functions.'" *Abdelwahab*, 578 F.3d at 821 n.6 (quoting *Ngure v. Ashcroft*, 367 F.3d 975, 983 (8th Cir. 2004)).

Conspicuous by its absence from these statements of the standards for determination of whether or not an agency decision falls within the § 701(a)(2) exception to judicial review is any reference to consideration of whether the matter at issue is one that falls within "agency expertise," the centerpiece of TTI's argument that § 701(a)(2) is inapplicable to its claim for judicial review. This is so, for the excellent reason that the Eighth Circuit Court of Appeals has expressly rejected such a standard—which it described as "the *Tuepker* 'pragmatic considerations' approach," after *Tuepker v. Farmers Home Admin.*, 708 F.2d 1329, 1332 (8th Cir. 1983)—nearly a quarter century ago in *State of North Dakota ex rel Bd. Of Univ. and School of Lands v. Yeutter*, 914 F.2d 1031, (8th Cir. 1990).[10] In *Yeutter*, the Eighth Circuit Court of Appeals based its

---

[10] In *Yeutter*, the court explained "the *Tuepker* 'pragmatic considerations'

rejection of an "agency expertise" or "pragmatic considerations" standard on two Supreme Court decisions:  (1) the decision in *Heckler v. Chaney*, 470 U.S. 821, 830 (1985), in which the Supreme Court placed "emphasis on statutory language as the source of law to apply" to a determination of whether or not the § 701(a)(2) exception applies; and (2) the subsequent decision in *Webster v. Doe*, 486 U.S. 592, 599-601 (1988), which the Eighth Circuit Court of Appeals concluded "cannot be read as confining [the consideration of the language and structure of the pertinent statute or regulation] specifically to agency refusals to take enforcement action, or in general to contexts in which a presumption of nonreviewability would apply." 914 F.3d at 1033-35.  In *Yeutter*, the court was "constrained to conclude . . . that *Chaney* and *Webster* together render the *Tuepker* 'pragmatic considerations' approach invalid." *Id.* at 1034-35.

> ### c.    *Applications of the exception*

Turning from statements of the scope of the exception to examples of its application, I begin, again, with the en banc decision of the Eighth Circuit Court of Appeals in *Tamenut*.   At issue in *Tamenut* was a regulation, 8 C.F.R. § 1003.2(a), that allowed the Board of Immigration Appeals (BIA) to reopen proceedings on its own

---

approach" by quoting the following from *Tuepker*:

> In determining reviewability of an agency's actions, a court must look at the allegations raised in the complaint, together with the governing statutes and regulations, and determine: (1) whether the challenged agency action is of the type Congress intended be left to a reasonable exercise of agency expertise; and (2) whether the problem raised is one suitable for judicial determination. It is only then that a court can sufficiently ascertain whether there is 'law' to apply within the meaning of Overton Park.

*Tuepker*, 708 F.2d at 1332; *Yeuter*, 914 F.2d at 1034 (quoting *Tuepker*, 708 F.2d at 1332).

motion. 521 F.3d at 1002. Tamenut, an alien subject to a removal order, had filed an application for asylum, but an immigration judge had denied that application. *Id.* The BIA denied Tamenut's first motion to reopen as untimely, so Tamenut filed a second motion to reconsider and reopen, including a request that the BIA reopen the proceedings on its own motion. *Id.* In response, "[t]he BIA acknowledged it retained 'limited discretionary powers' under § 1003.2(a) to reopen proceedings on its own motion, but stated that this power is confined to 'exceptional situations,' and concluded that Tamenut's situation did not merit this relief." *Id.* (citing *Matter of J–J–*, 21 I & N Dec. 976 (BIA 1997)). Tamenut then filed a petition for judicial review, "arguing that the BIA abused its discretion by declining to reopen *sua sponte*, and that the BIA's decision violated the Due Process Clause." *Id.* A panel of the court indicated that, if there had been no prior controlling circuit law, it would have concluded that it "lack[ed] jurisdiction," but held that the BIA's refusal to reopen *sua sponte* was subject to judicial review. *Id.* The en banc court granted rehearing "to consider the jurisdictional question," *id.* at 1003, that is, whether § 701(a)(2) excepted the BIA's decision from judicial review. *See Ochoa*, 604 F.3d at 549-50 (explaining that the § 701(a)(2) exception, if applicable, means that the plaintiff cannot state a claim for judicial review, not that the court lacks subject matter jurisdiction over such a claim); *see also, supra*, Section II.A., beginning on page 11.

The en banc court concluded that the BIA's decision fell within the § 701(a)(2) exception to judicial review:

> The statute governing motions to reopen speaks only to motions filed by a party; it does not establish any standard to guide the agency's discretion whether to reopen on its own motion. *See* 8 U.S.C. § 1229a(c)(7). The regulation establishing the BIA's authority to reopen *sua sponte* was promulgated pursuant to a general grant of regulatory authority that sets no standards for this decision. *See* 8 U.S.C.

27

§ 1103(g). The regulation itself, 8 C.F.R. § 1003.2(a), provides no guidance as to the BIA's appropriate course of action, sets forth no factors for the BIA to consider in deciding whether to reopen sua sponte, places no constraints on the BIA's discretion, and specifies no standards for a court to use to cabin the BIA's discretion. *See Interstate Commerce Comm'n v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987); *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1027 (8th Cir.2003) (stating that the "committed to agency discretion" exception applies only where statutes do not "provide even minimal guidance to limit agency discretion"). The use of permissive and discretionary language in the first sentence of § 1003.2(a) further supports the inference that the agency action is unreviewable. *See Southern Ry.*, 442 U.S. at 456, 99 S.Ct. 2388; *Association of Irritated Residents v. EPA*, 494 F.3d 1027, 1032–33 (D.C.Cir.2007).

We are mindful that the BIA has said it may reopen proceedings on its own motion in "exceptional situations," *In re J–J–*, 21 I & N Dec. at 984, and that agency decisions about the presence of "exceptional circumstances," a similar phrase, are reviewable for abuse of discretion in some contexts, such as where the phrase is further defined by statute or regulation. *See, e.g.*, 8 U.S.C. § 1229a(e)(1) ("The term 'exceptional circumstances' refers to exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances beyond the control of the alien."). We agree with other circuits, however, that there is no statutory, regulatory, or case-law definition of "exceptional situation" applicable to the BIA's *sua sponte* power under § 1003.2(a), *e.g., Ekimian*, 303 F.3d at 1159, and that the use of the permissive term "may" in the regulation further implies that the BIA is under no obligation to reopen any particular case. *Enriquez - Alvarado*, 371 F.3d at 249–50. Assuming that a settled course of adjudication could establish a meaningful standard by

28

which to measure the agency's future exercise of discretion, the mere fact that the BIA has acknowledged the existence of its authority to reopen *sua sponte* in what it deems to be "exceptional situations" is not sufficient to establish a meaningful standard for judging whether the BIA is *required* to reopen proceedings on its own motion. *See Calle–Vujiles*, 320 F.3d at 474–75. Therefore, we hold that the BIA's decision whether to reopen proceedings on its own motion pursuant to 8 C.F.R. § 1003.2(a) is committed to agency discretion by law.

*Tamenut*, 521 F.3d at 1004-05; *see also Liadov*, 518 F.3d at 1010-11 (also concluding that the § 701(a)(2) exception was applicable).[11]

_____

[11] In the post-*Tamenut* decision in *Liadov*, the Eighth Circuit Court of Appeals explored when agency-imposed limitations on the agency's discretion permit judicial review of an agency's decisions, making § 701(a)(2) inapplicable. In *Liadov*, the court considered whether judicial review was available for an agency's decision under 8 C.F.R. § 1003.1(c), a "complementary" regulation to the one at issue in *Tamenut*, because it permitted the BIA to self-certify an appeal of an order of removal. *Liadov*, 518 F.3d at 1005-06, 1010. In *Liadov*, the aliens had petitioned for asylum, but their petition was denied, and they had filed only an untimely appeal. *Id*. at 1005-06. The court's analysis was as follows:

> In *In re J–J–*, 21 I & N Dec. 976, 984 (BIA 1997), the BIA stated that it has "limited" discretionary power to reopen or reconsider cases on its own motion under § 1003.2(a), but cautioned that this power "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations." In this case, the BIA relied on *J–J* in stating that it may certify a case to itself under § 1003.1(c) in "exceptional circumstances," thus confirming that the two regulations serve complementary purposes. *Liadov*, 23 I & N Dec. at 993. In addition to relying on the judicial "unique circumstances" doctrine of *Atiqullah*, the Liadovs argue that the BIA abused its discretion in refusing to apply its own

29

"exceptional circumstances" exception to excuse their untimely filing. The government responds that we "lack jurisdiction to review" the BIA's refusal to certify this case to itself under § 1003.1(c) because that decision is "committed to agency discretion" and the regulation "provides no meaningful standard" for measuring the agency's exercise of discretion. *See generally* 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).

The en banc court recently reviewed a BIA order refusing to exercise its discretion under 8 C.F.R. § 1003.2(a) to reopen a proceeding sua sponte in response to an alien's untimely motion to reopen. Based upon (1) the total absence of statutory standards, (2) the absence of meaningful guidance for applying the "exceptional circumstances" standard in the regulation to the variety of circumstances in which the BIA may invoke or may be asked to invoke this discretionary power, and (3) the absence of a "settled course of adjudication" that could establish a meaningful standard, we joined ten other circuits in holding that the order was an unreviewable action committed to agency discretion by law. *Tamenut v. Mukasey*, 521 F.3d 1000, 1004–05 (8th Cir. 2008).

In this case, we consider the BIA's refusal to invoke 8 C.F.R. § 1003.1(c), the complementary self-certification regulation, in response to the Liadovs' timely motion to reopen. The effect of this ruling is to bar judicial review of the removal order because of the Liadovs' failure to exhaust this administrative remedy. Thus, the situation is different than in *Tamenut*, where the alien's right to judicial review of the final order of removal had expired. Had the BIA declared that the time limit in § 1003.38(b) is non-mandatory and subject to an exception for "extraordinary circumstances," we would review whether its decision not to invoke the exception in a particular case was arbitrary and capricious. *See Lara v.*

30

In contrast to *Tamenut*, which found that the § 701(a)(2) exception was applicable to the agency decision in question, in *Friends of Norbeck*, the Eighth Circuit Court of Appeals concluded that the § 701(a)(2) exception was not applicable. In *Friends of Norbeck*, the challenge was to an agency decision pursuant to 16 U.S.C. § 675, which

---

> *Trominski*, 216 F.3d 487, 497–98 (5th Cir.2000); *Oberstar*, 987 F.2d at 504; *Union Flights, Inc. v. Administrator, FAA*, 957 F.2d 685, 687–88 (9th Cir.1992). The review would be conducted, not under the judicially-created "unique circumstances" doctrine, but for abuse of the agency's discretion in applying its own exception to a non-mandatory time limit. However, both the BIA and the Attorney General have steadfastly maintained that the time limit is mandatory, and the BIA's reference to its self-certification authority in this case was a reaction to the unwarranted judicial demand for an exception imposed by *Oh* and *Sun* rather than a change of agency position. Therefore, the refusal to self-certify may not be reviewed on the ground that the agency itself treats the appeal time limit as non-mandatory.
>
> If the BIA continues to maintain that its appeal time limit is mandatory but routinely considers whether to use its self-certification authority to revive an untimely appeal because of "extraordinary circumstances," there might well develop a "settled course of adjudication" that would provide a meaningful standard and thereby make the agency's refusal to self-certify in this context judicially reviewable under the *Heckler v. Chaney* line of cases. *See Calle–Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir.2003); *see also INS v. Yueh–Shaio Yang*, 519 U.S. 26, 32, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996). But there is no such settled course at this time. Thus, under *Tamenut*, the BIA's refusal to self-certify was an unreviewable action committed to the agency's discretion.

*Liadov*, 518 F.3d at 1010-11.

31

provides that the Norbeck Wildlife Preserve "be set aside for the protection of game animals and birds, and be recognized as a breeding place therefor." 661 F.3d at 975 (citing § 675). The court in *Friends of Norbeck* concluded that § 675 provided "standards, albeit broad ones, for the Forest Service's decisions with respect to game animals and birds and guidance to the courts for evaluating those decision." *Id.* Unfortunately, the court did not further explain where those standards—albeit broad ones—for the Forest Service's decision could be found in the statutory language. It did, however, cite in support of its conclusion its prior decision in *Sierra Club-Black Hills Group v. U.S. Forest Service*, 259 F.3d 1281, 1285 (8th Cir. 2001). *See Friends of Norbeck*, 661 F.3d at 975. The pertinent part of the decision in *Sierra Club-Black Hills Group* appears to be the court's statement that, while the mandate of the National Forest Management Act (NFMA) is "to optimize overall diversity, the Norbeck Organic Act [(NOA)] specifically designates the Norbeck Wildlife Preserve more narrowly 'for the protection of game animals and birds and . . . as a breeding place there[for].'" 259 F.3d at 1285 (quoting 16 U.S.C. § 675). I surmise that the standard placed on agency discretion in 16 U.S.C. § 675 that made the § 701(a)(2) exception inapplicable to agency decisions pursuant to that statute was the "narrow" purpose of protecting certain animals (specifically, game animals and birds) and their breeding places, rather than protecting all wildlife for all purposes.

### 3.    *Applicability of the § 701(a)(2) exception to a Rule 183 decision*

As the PTO pointed out in the decision that TTI challenges here, the statue that formerly governed the filing for IPReex proceedings, 35 U.S.C. § 311 (effective November 2, 2002, to September 14, 2012), does not require the filing of a certificate of

32

service with an IPReex Request.[12]  Rather, the requirements for filing an IPReex request, including the payment of a fee and "[a] certification by the third party requester that a copy of the request has been served in its entirety on the patent owner," come from Patent Rule 915(a), (b)(6), and (d).  37 C.F.R. § 1.915(a), (b)(6), and (d).  Furthermore, Patent Rule 919 establishes the filing date of a request for IPReex, as follows:

> (a) The filing date of a request for inter partes reexamination is the date on which the request satisfies all the requirements for the request set forth in § 1.915.

> (b) If the request is not granted a filing date, the request will be placed in the patent file as a citation of prior art if it complies with the requirements of § 1.501.

---

[12] What the former version of § 311 did provide was the following:

§ 311. Request for inter partes reexamination

**(a) In general.**—Any third-party requester at any time may file a request for inter partes reexamination by the Office of a patent on the basis of any prior art cited under the provisions of section 301.

**(b) Requirements.**—The request shall—

**(1)** be in writing, include the identity of the real party in interest, and be accompanied by payment of an inter partes reexamination fee established by the Director under section 41; and

**(2)** set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested.

**(c) Copy.**—The Director promptly shall send a copy of the request to the owner of record of the patent.

35 U.S.C. § 311 (expired).

33

37 C.F.R. § 1.919.  There is no dispute that the part of EDNA's IPReex Request that certified proper service on TTI was not filed with the PTO until September 16, 2012, two days after EDNA filed the other parts of its IPReex Request.

The PTO nevertheless deemed ENDA's IPReex Request filed as of September 14, 2012, relying on Patent Rule 183 as its authority to do so in the September 6, 2013, agency decision that TTI challenges here.  Rule 183, that is, 37 C.F.R. § 1.183, provides for suspension of Patent Rules, as follows:

> *In an extraordinary situation, when justice requires,* any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, sua sponte, or on petition of the interested party, subject to such other requirements as may be imposed. Any petition under this section must be accompanied by the petition fee set forth in § 1.17(f).

37 C.F.R. § 1.183 (emphasis added).  Because the filing requirements for an IPReex request in Rules 915 and 919 are not requirements of former 35 U.S.C. § 311, the Director (or the Director's designee, here, the Director of the Central Reexamination Unit) had the authority to waive the requirements of Rules 915 and 919, if EDNA's filing of its IPReex Request presented "an extraordinary situation, when justice require[d]" such a waiver.  The question is, does Rule 183 involve a decision "committed to agency discretion by law," such that the agency's September 6, 2013, reaffirmation of its decision to deem EDNA's IPReex Request filed on September 14, 2012, is excepted from judicial review by § 701(a)(2) of the APA?

I have found no federal court decision, and the parties have cited none, considering whether the exercise of the PTO's discretion under Rule 183 is excepted from judicial review pursuant to § 701(a)(2).  Thus, in the first instance, I must apply the guidance on

34

the scope of the § 701(a)(2) exception provided by *Tamenut* and other decisions of the Eighth Circuit Court of Appeals.

I must conduct a "careful examination of the statute [or in this case, regulation] on which the claim of agency illegality is based," considering "both the nature of the administrative action at issue and the language and structure of the statute [or regulation] that supplies the applicable legal standards for reviewing that action." *Tamenut*, 521 F.3d at 1003-04 (internal quotation marks and citations omitted). The plain language of Rule 183 allows the agency to waive non-statutory requirements in its regulations, *sua sponte* or upon the petition of an interested party, and does not establish any standard to guide the agency's discretion concerning whether or not to do so. *See* 37 C.F.R. § 1.183. Although Rule 183 states the nebulous standard, "[i]n an extraordinary situation, when justice requires," the regulation itself sets forth no factors for the PTO to consider in deciding whether or not to waive requirements of a regulation, places no constraints on the PTO's discretion, and specifies no standards for a court to use to cabin the PTO's discretion. *Id*. at 1004. The use of the permissive and discretionary language, "*may* be suspended or waived," in Rule 183 further supports the inference that the agency action pursuant to that rule is unreviewable. *Id.*

Like the en banc court in *Tamenut*, I am mindful that this regulation expressly states that requirements imposed by regulation may be waived in an "extraordinary situation," and that agency decisions about the presence of "exceptional circumstances," a similar phrase, are reviewable for abuse of discretion in some contexts, such as where the phrase is further defined by statute or regulation. *Id.* Like the court in *Tamenut*, considering the BIA's authority under 8 C.F.R. § 1003.2(a), however, I conclude that there is no statutory, regulatory, or case-law definition of "extraordinary situation" that is applicable to the PTO's *sua sponte* power to waive requirements imposed by regulations under Rule 183. *Id*. at 1004-05. Again, the use of the permissive term "may"

35

in the regulation further implies that the PTO is under no obligation to waive or refrain from waiving any requirements imposed by regulation. *Id.* Here, the parties have pointed to no "settled course of adjudication" that could establish a meaningful standard by which to measure the PTO's future exercise of discretion under Rule 183, and the mere fact that Rule 183 gives the PTO such authority is not sufficient to establish a meaningful standard for judging whether the PTO was required or prohibited from waiving requirements imposed by regulation in any particular instance. *Cf. id.* at 1005.

Thus, the guidance of *Tamenut* leads me to the conclusion that a Rule 183 decision is committed to agency discretion by law and, consequently, excepted from judicial review by § 701(a)(2).

Both *Liadov* and *Friends of Norbeck* lead me to the same conclusion. As explained in *Liadov*, if the PTO had declared that the filing requirements for an IPReex action in Rules 915 and 919, including the filing of a certificate of service, were non-mandatory and subject to an exception for "an extraordinary situation," I would review whether the PTO's decision not to invoke that "extraordinary situation" exception in EDNA's case was arbitrary and capricious. 518 F.3d at 1011. Such a review would not be under some judicially-created "extraordinary situation" or "exceptional circumstances" doctrine, but for abuse of the PTO's discretion in applying its own exception to a non-mandatory requirement. *Id.* However, both Rule 915 and Rule 919 are cast in mandatory terms: Rule 915 states requirements that "must" be met, *see* 37 C.F.R. § 1.915; and Rule 919 states that the filing date "is" the date on which the request satisfies all the requirements for the request set forth in Rule 915, *see* 37 C.F.R. § 1.919. Thus, the PTO's application of Rule 183 to waive these requirements of Rules 915 and 919 cannot be reviewed on the ground that the PTO itself treats these requirements as non-mandatory. *Id.* Furthermore, the parties have not pointed to any evidence that the PTO treats the requirements of Rules 915 and 919 as mandatory, but routinely considers whether to use its Rule 183 authority

36

to waive those requirements, so that there is no evidence of a "settled course of adjudication" of the "extraordinary situation, when justice requires" exception that would provide a meaningful standard for judicial review. *Id.*

The situation here is also distinguishable from the situation presented in *Friends of Norbeck*, in which the Eighth Circuit Court of Appeals held that the § 701(a)(2) exception was not applicable. 661 F.3d at 975. The "extraordinary situation, when justice requires" standard is not simply a broad standard that, nevertheless, provides sufficient guidance for the PTO's decisions pursuant to Rule 183 or to the courts for evaluating those decisions, *see id.*, it is a nebulous standard, inviting the exercise of complete discretion by the PTO. There is no hint of a narrowing of the purpose of Rule 183, such as could be perceived in 16 U.S.C. § 675, the statute at issue in *Friends of Norbeck*, because, while there is a purpose stated in Rule 183, "when justice requires," it is only a hortatory purpose, not a specific one, like protecting specific animals (game animals and birds) and a breeding place for them. *Compare id.*; *Sierra Club-Black Hills Group*, 259 F.3d at 1285.

These additional Eighth Circuit decisions lead me, again, to the conclusion that the PTO's decision to apply Rule 183 to adjust the filing date of EDNA's IPReex Request is committed to the agency's discretion by law and, as such, is excepted from judicial review by § 701(a)(2).

I have found, and the parties have pointed to, some additional federal court cases considering whether agency decisions based on regulations or statutes permitting an agency to do something in "extraordinary" or "exceptional" "circumstances" or "situations," but none considering agency authority to do something "when justice requires." Only one of those decisions requires any further comment here, *Burandt v. Dudas*, 528 F.3d 1329 (Fed. Cir. 2008), which TTI contends supports its contention that a Rule 183 decision is subject to judicial review.

37

In *Burandt*, the Federal Circuit Court of Appeals considered an appeal of a grant of summary judgment for the PTO on judicial review of the PTO's denial of Burandt's request for a waiver, pursuant to Rule 183, of a requirement under 37 C.F.R. § 1.378(b) to show unavoidable delay in paying a maintenance fee that would allow the Director to accept late payment. 528 F.3d at 1331-32.  The pertinent part of the decision in *Burandt* is the following:

> Lastly, we disagree with Burandt that reversal is warranted because the district court erred in sustaining the denial of his Rule 183 petition. Burandt filed a petition under 37 C.F.R. § 1.183, which provides that:
>
>> In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, sua sponte, or on petition of the interested party, subject to such other requirements as may be imposed.
>
> 37 C.F.R. § 1.183. The PTO denied Burandt's request for waiver upon concluding that a showing of unavoidable delay is required under § 1.378 and thus that the fee cannot be waived. There is no error in the PTO's denial or in the district court's upholding of that denial. Section 183 is cast in discretionary terms, providing that the Director may waive a requirement. He did not waive the fee requirement here, and, for the reasons stated above, we find no error with respect to that decision.

*Burandt*, 528 F.3d at 1335-36.  The problem with TTI's reliance on *Burandt* as standing for the proposition that PTO decisions pursuant to Rule 183 are subject to judicial review is that *Burandt* simply did not address whether a Rule 183 decision falls within the exception to judicial review in § 701(a)(2). Furthermore, because the applicability of the exception to judicial review in § 701(a)(2) is not a matter of subject matter jurisdiction, but a matter of whether or not a party has stated a claim for judicial review upon which

38

relief can be granted, *see Ochoa*, 604 F.3d at 549-50; *see also, supra*, Section II.A., beginning on page 11, there was no obligation for any party or the court in *Burandt* to raise the possibility that § 701(a)(2) excepted the Rule 183 decision at issue from judicial review.

Because the § 701(a)(2) exception to judicial review is applicable here to the PTO's decision to invoke Rule 183 to waive the requirements of Rules 915 and 919 and to deem EDNA's IPReex Request filed as of September 14, 2012, TTI's claim for judicial review lacks a cognizable legal theory. As such, it is dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). *See, e.g., Somers*, 729 F.3d at 959; *Ball*, 726 F.3d at 469; *Commonwealth Property Advocates, L.L.C.*, 680 F.3d at 1202; *see also Philadelphia Indem. Ins. Co.*, 732 F.3d at 649.

## B.    *TTI's Due Process Claim*

TTI also alleges that the PTO's decision to change the date of filing of EDNA's IPReex Request from September 16, 2012, to September 14, 2012, without notice to TTI, was contrary to TTI's constitutional right of notice and due process, was unlawful, and should be set aside under the APA, 5 U.S.C. § 706(2)(B). The Director also seeks dismissal of this claim.

### 1.    *Arguments of the parties*

The Director argues that, to overcome § 701(a)(2)'s bar to APA review of discretionary agency action, a constitutional claim must be "colorable," that is, have "some possible validity," and that parties should not be allowed to evade the § 701(a)(2) exception by "cloaking an abuse of discretion argument in constitutional garb." More specifically, the Director contends that a due process claim is not colorable if the plaintiff points to nothing that calls into doubt the fundamental fairness of the procedure employed. The Director argues that TTI neither does nor could point to anything that calls into doubt

the fundamental fairness of the PTO's Rule 183 decision, where TTI was allowed to challenge the Rule 183 decision and to move to reconsider the initial denial of its challenge. The Director also argues that TTI's due process claim appears so peripherally in its complaint that it is an afterthought that cannot escape the application of § 701(a)(2).

In response, TTI argues that its due process claim is based on the lack of notice, which impaired its due process right to be heard. Here, TTI argues, EDNA's failure to serve TTI properly and the Director's decision to waive such service requirements deprived TTI of proper notice. TTI also argues that the agency's decision to change the filing date *sua sponte* improperly deprived TTI of notice, because TTI was not properly served until after the IPReex statute had expired and the new IPR statute had gone into effect. Further, TTI argues, the Director's arbitrary and capricious decision to change the filing date to comport with an ineffective date of service and to deny TTI's Rule 181 petition to remedy that error, citing authority under Rule 183, when no one had even asked for such relief, deprived TTI of proper notice, which is a fundamental principle of the due process clause. Thus, TTI asserts that its due process claim is colorable.

The Director did not reply to TTI's arguments that TTI's due process claim is colorable.

### 2.    *Analysis*

As with the standards for the scope of the § 701(a)(2) exception, the standards applicable to the part of the Director's Motions To Dismiss seeking dismissal of TTI's due process claim are set forth in the en banc decision of the Eighth Circuit Court of Appeals in *Tamenut*. In that case, the court observed that, even where a claim for judicial review of an agency decision may be excepted from review by § 701(a)(2), a court "generally do[es] have jurisdiction over any colorable constitutional claim." *Tamenut*, 521 F.3d at 1005. The court also explained that, "[t]o be colorable, a constitutional claim must have 'some possible validity.'" *Id.* (quoting *Torres–Aguilar v. INS*, 246 F.3d

40

1267, 1271 (9th Cir. 2001)). On the other hand, "contentions [that] simply 'cloak[ ] an abuse of discretion argument in constitutional garb' . . . are . . . insufficient to justify judicial review." *Id.* (quoting *Onyinkwa v. Ashcroft*, 376 F.3d 797, 799 n.1 (8th Cir. 2004)). In *Tamenut*, where the due process clause guaranteed that removal proceedings will be "fundamentally fair," "Tamenut quarrel[ed] with the BIA's fact-specific discretionary decision whether to reopen his case, but he point[ed] to nothing that call[ed] into doubt the fundamental fairness of the procedures employed." *Id.* Thus, the court rejected Tamenut's due process claim. *Id.*

Like the alien in Tamenut, TTI quarrels with the agency's discretionary decision, here, the PTO's decision pursuant to Rule 183 to waive the filing requirements of Rules 915 and 919 and to deem EDNA's IPReex Request filed as of September 14, 2012. Thus, to that extent, TTI's due process claim is simply an attempt to cloak an abuse of discretion argument in constitutional garb, and, to that extent, it is insufficient to justify judicial review. *Cf. id.* TTI contends, however, that it has also pointed to matters in the record that call into doubt the fundamental fairness of the procedures employed. *See id.* Specifically, TTI points to EDNA's failure to serve TTI properly and the Director's decision to waive such service requirements without prior notice and without any request from anyone to do so.

TTI cannot dispute, however, that it received notice of EDNA's IPReex Request that had been served on September 14, 2012, even if it did not receive notice that fully complied with Rules 915 and 919. Rule 183 permits the PTO to waive requirements imposed by regulations *sua sponte*, and TTI admits in its pleadings that it received notice of the PTO's *sua sponte* action to adjust the filing date of EDNA's IPReex Request. Thus, the crux of TTI's claim of a due process violation is that it was fundamentally unfair because TTI did not receive *prior* notice of and a *pre-decision* opportunity to be heard on the PTO's *sua sponte* adjustment of the filing date of EDNA's IPReex Request.

41

Assuming, without deciding, that TTI has an interest protected by due process, *see, e.g., Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the [Fifth] Amendment's protection of liberty and property" and "the range of interests protected by procedural due process is not infinite."), a due process claim necessarily involves the question of what process is due. *Business Commc'ns, Inc. v. U.S. Dep't of Educ.*, 739 F.3d 374, 380 (8th Cir. 2013) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). As the Eighth Circuit Court of Appeals has explained, "Required procedures may vary according to the interests at stake, but '[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), in turn quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Due process may be satisfied by adequate proceedings either pre-deprivation or post-deprivation. *Id.* at 380-83; *see also Buckingham v. Secretary of USDA*, 603 F.3d 1073, 1082 (9th Cir. 2010) ("[P]rocedural due process does not require that the notice and opportunity to be heard occur before the deprivation." (citing *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).

Here, TTI has pointed to nothing in its pleadings or its arguments demonstrating that—in the circumstances of this case and in view of whatever interest TTI may have that is protected by due process and impinged by the determination of the filing date of EDNA's IPReex Request—due process required *prior* notice of and a *pre-decision* opportunity to be heard on the PTO's *sua sponte* adjustment of the filing date of EDNA's IPReex Request. Furthermore, TTI admits in its pleadings that it had *post-deprivation* opportunities to challenge the PTO's *sua sponte* adjustment of the filing date of EDNA's IPReex Request. *See Business Commc'ns, Inc.*, 739 F.3d at 380-83 (due process may be satisfied by pre- or post-deprivation proceedings); *accord Buckingham*, 603 F.3d at 1082

42

(due process does not require pre-deprivation notice and proceedings). TTI availed itself of those opportunities, not once, but twice, in its Rule 181 Petition and its petition for reconsideration of the initial denial of its Rule 181 Petition. TTI challenges nothing about those post-deprivation proceedings as "fundamentally unfair" except the ultimate decision. In short, even to the extent that TTI attempts to state a due process claim based on fundamental unfairness, it has done nothing more than "'cloak[ ] an abuse of discretion argument in constitutional garb,'" which is "insufficient to justify judicial review." *Tamenut*, 521 F.3d at 1005 (quoting *Onyinkwa*, 376 F.3d at 799 n.1). To put it another way, the pleadings give rise to no plausible inference of unfairness nor do they call into doubt the fundamental fairness of the procedures employed, *id*. at 1005, and they give rise to no plausible inference that the agency action that TTI challenges violated TTI's due process rights. *See Freitas*, 703 F.3d at 438 (Rule 12(b)(6) standard); *Whitney*, 700 F.3d at 1128 (same); *Richter*, 686 F.3d at 850 (same).

Because TTI has stated no colorable due process claim, that is, a claim with some possible validity, as it must to afford judicial review of agency action, *see Tamenut*, 521 F.3d at 1005, the Director's Motions To Dismiss are granted as to that claim, as well.

## IV.   CONCLUSION

Notwithstanding that the Director cited the wrong subsection of Rule 12(b) of the Federal Rules of Civil Procedure as the basis for her Motions To Dismiss, it is plain that TTI has failed to state claims upon which relief can be granted. TTI's claims for judicial review are excepted from judicial review by § 701(a)(2) of the APA, because the challenged action was "committed to agency discretion by law." TTI's due process claim is not colorable, so that it does not afford judicial review of the challenged agency action. Because TTI's claims for judicial review and violation of due process fail to state claims

43

upon which relief can be granted, TTI's cause of action for a stay of agency proceedings pending disposition of this action is moot.

THEREFORE, upon the foregoing, the Director's December 23, 2013, Motion To Dismiss (docket no. 7), and her January 16, 2014, Second Motion To Dismiss (docket no. 11), construed as motions to dismiss for failure to state claims upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, are **granted**, and TTI's Amended Complaint is **dismissed**.

**IT IS SO ORDERED**.

**DATED** this 5th day of March, 2014.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA